THE BALTIMORE STEAM PACKET COMPANY *vs.* JOSEPH P. SMITH.

COMMON CARRIER: EVIDENCE OF DELIVERY OF BAGGAGE BY CARRIER TO THE NEXT CARRIER, DERIVED FROM A GENERAL COURSE OF BUSINESS: PARENT AND CHILD: CONSIGNOR AND CONSIGNEE.—In an action against a carrier, the evidence relied on by the defendant, as tending to show that a trunk, for which a through check was given, had been delivered over to the next carrier, and, for that reason, as legally sufficient to go to the jury, was that of a clerk employed in one of the defendant's boats, who testified:—that if a trunk is not delivered to the connecting carrier at Portsmouth, it is always brought back to the defendant's office, in Baltimore; that he knew of no such occurrence during the month in which the loss occurred; that the baggage agents on board of the defendant's boats made lists of the through baggage delivered by them to the connecting line, and that these lists were not preserved. HELD:

1st. That without positive proof that the trunk was properly delivered by the defendant at Portsmouth, any presumption that could arise in the defendant's favor, would be repelled by one equally strong in favor of the carriers from that point to Wilmington.

2nd. That the loss of the trunk, under the circumstances shown in this case, was evidence so far conclusive of negligence on the part of the defendant, that it could not be rebutted, nor the defendant's liability for the loss discharged, by any general inferences from its mode or system of business.

3rd. That to effect that result, it was necessary to show, by positive proof, that the undertaking to transport and deliver the trunk at Portsmouth, had been fully and completely performed.

4th. That the fact that the lost clothing was prepared for the daughter of the plaintiff, nineteen years of age, does not divest him of the right to recover its value in an action against the carrier.

5th. That as the contract for the transportation was made with the plaintiff, and the checks for the baggage, including the lost trunk, was made with him, he, as holder of the checks, which took the place of a bill of lading, was entitled as consignee, as well as upon the contract made with him, to demand a performance of the contract by the defendant, or, upon its default, to recover the damages resulting therefrom.

APPEAL from the Superior Court of Baltimore city.

The facts of this case are sufficiently stated in the opinion of the Court.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Wm. Schley,* for the appellant:

1st. The defendant was not liable for the neglect or default of any of the other carriers. By the express terms of the contract, declared on the face of the ticket, the defendant was only liable for breach of the contract on its portion of the route; that is, for its own failure of duty. *Nutting vs. Connecticut River R. R. Co.,* 1 *Gray,* 502. *Van Santvoord vs. St. John,* 6 *Hill,* 157. *F. & M. Bank vs. Champlain Trans. Co.,* 18 *Verm.,* 140, and 23 *Verm.,* 209. *Hood vs. N. Y. & N. H. R. R. Co.,* 22 *Conn.,* 1, 502. *Pierce on Railways,* 454. And *vide* notes to the case of *Weed vs. Saratoga & Schenectady Railroad Co.,* in 2 *American Railway Cases,* 280. Even if the defendant's liability had not been expressly restricted, there would have been no implication of its responsibility for the other companies. It would have been *ultra vires*—a violation of its charter.

*Penn., Del. & Md. Nav. Co. vs. Dandridge,* 8 *G. & J.,* 248. *Savage Man. Co. vs. Williams,* 1 *Gill,* 284.   *Abbott vs. Balt. & Rapp. Steam P. Co.,* 1 *Md. Ch. Dec.,* 542.

As to the effect of conditions, and limitation of the carrier's responsibility by notice, see *Fowles vs. The Great Western Railway Co.,* 7 *Excheq.,* 699.   *Pierce on Railroad Law,* 417, 420, 499, 500.   *Brown vs. Eastern R. R. Co.,* 11 *Cush.,* 79.   *Davis, et al., vs. Barney,* 2 *G. & J.,* 382. *Davis vs. Davis,* 7 *H. & J.,* 36.

2nd. There was evidence, even if slight evidence, that. the trunk was duly delivered to the Seaboard and Roanoke Railroad Company.   The question of the sufficiency or insufficiency—the provative force—of the evidence to establish the fact, is for the jury.   The Court can only decide upon its legal sufficiency to go to the jury as evidence. *Maltby vs. Northwestern Va. R. R. Co.,* 16 *Md. Rep.,* 445.

3rd. There was evidence in the cause, legally sufficient to be considered by the jury, from which they might well have found that the contents of the trunk, being her wearing apparel, were the property of the daughter, notwithstanding her statement that the trunk belonged to the plaintiff.   If so, then in the absence of proof that the *lex domicilii* was different in this respect from the *lex fori,* she ought to have sued as passenger, or as owner of the lost articles, by *prochein ami.*   The father could not maintain the suit in *proprio jure,* nor as natural guardian.   *Hunter vs. Westbrook,* 12 *Eng. C. L. Rep.,* 272.   *Peters vs. Fleming,* 6 *Mees. & Wels.,* 45.   *Manby vs. Scott,* 1 *Siderfin,* 129. *Mayor, &c., vs. Norman,* 4 *Md. Rep.,* 352.   *Davis vs. Jacquin,* 5 *H. & J.,* 110.   *McPherson on Infants,* 342.

*I. Nevitt Steele,* for the appellee, contended:

1st. That the appellee's 2nd prayer was properly granted, because, even if the undertaking of the appellant, in taking possession of and checking to Wilmington the trunk of the appellee, was limited by force of the notice on the "through ticket," to the safe delivery of the trunk to the

Seaboard and Roanoke Railroad Company, yet the appellant having, for its own profit and to induce passengers to travel on its route, made an arrangement with the Southern Railroad lines, by which it could check baggage through to Wilmington, and having given to the appellee its check, which entitled him to demand his trunk from the baggage agent at that place, and the appellee having made such demand, and failed to obtain the trunk, the burthen was upon the appellant to show a delivery of the trunk to the Seaboard and Roanoke Railroad Company, and there was no sufficient proof of such delivery; and because wherever an arrangement for through transportation, such as existed in this case, is made by a number of common carriers, each limiting his responsibility to his own route, public policy and the protection of travelers require that the carrier receiving baggage should, in the event of its loss, be compelled to show that he delivered it to the carrier who was next properly to receive it; and because such arrangement constitutes a *quasi* partnership,—and although the carrier receiving the baggage under such arrangement, only undertakes to transport it and be responsible for it over his own line, yet, if he gives a receipt or check for it, making it deliverable at the end of another line, and it is not so delivered, his agreement is broken, and it is for him to show that he has performed that part of it which he undertook to perform. *Pierce on Railways*, 500, 501. *Dill vs. S. C. R. R.*, 7 *Rich.*, 158. *Davis vs. R. R. Co.*, 10 *How. Prac. Rep.*, 330. *Muschamp vs. Lancaster R. R. Co.*, 8 *Mees. & Wels.*, 421. *Redfield on Railways*, 242, sec. 128.

2nd. That the 1st prayer of the appellant was properly rejected, because it excluded from the consideration of the jury the fact that the appellant had entered into an arrangement with other Companies, by which through tickets were to be bought of the agent in New York, and baggage was to be checked to Baltimore, and thence checked by the appellant to Wilmington; and also excluded from their consideration the fact that a check to Wilmington, for appel-

lee's trunk, was given by the appellant; both of which facts, and especially the latter, the jury ought to have considered in ascertaining what was the extent of appellant's responsibility, and whether it had not, in consideration that appellee would take the Bay Line, instead of going by Washington, agreed, by its check, that it would have his trunk delivered at Wilmington; because payment of fare to an authorized agent in New York, had the same effect as if paid to the appellant directly; because the burthen of proving the non-delivery of the trunk to the Seaboard and Roanoke Railroad Company, was, by the prayer, placed on the appellee; and because the purchase of the through ticket, under the circumstances of this case, is not such notice of the conditions printed on it, as to make them part of the contract between the appellant and appellee. *Muschamp vs. Lancaster R. R. Co.*, 8 *Mees. & Wels.*, 421.

3rd. That the 3rd prayer of the appellant was properly rejected, because there was no sufficient evidence that the articles contained in the lost trunk were the property of the appellee's daughter; because the legal title to the clothes provided by a father for the use of an infant daughter, living in his care and custody, and not emancipated, remains in the father, unless, perhaps, in the case of a formal and irrevocable gift; and because, in this case, the father having made the contract with the appellant, and being the holder of the check, was consignor and consignee of the trunk, and was the proper person to bring the suit for its loss. *Siderfin's Rep.*, 129. *Angell on Carriers, sec.* 499, 500. *Brooke vs. Pickwick*, 4 *Bingham's Rep.*, 218. 13 *Eng. C. L. Rep,,* 404. *Griffith vs. Ingleden*, 6 *Serg. & Rawle*, 429. *Freeman vs. Birch*, 1 *Nev. & Man.*, 420. *Moore vs. Wilson*, 1 *Term Rep.*, 659.

At the trial of this cause, the appellee excepted to the rejection of his 1st prayer, and to the granting of the appellant's 2nd prayer. This exception constitutes the case No. 79 on the docket of this Court.

It will be contended for the appellee, on this exception,

that where a "through ticket" is purchased at the window of a Railroad office, and especially where it is paid for before it is handed to the purchaser, and there are printed on said ticket, in fine type, certain limitations of the Railroad Company's responsibility, the purchaser has not such notice of these limitations as to make them part of the contract between himself and the Company. *Pierce on Railways*, 421, 423, 424. *Hart vs. R. R. Co.*, 4 *Selden*, 38, 39, 40. *Redfield on Railways*, 242 and 235, note. 21 *Wend.*, 354. *Perkins vs. R. R. Co.*, 47 *Me. Rep.*, 589, 590, 591. *Noyes vs. R. R. Co.*, 27 *Vt. Rep.*, 110. *Fitch vs. R. R. Co.*, 6 *Gray*, 539, 540. *Brown vs. R. R. Co.*, 11 *Cush.*, 97. *Butler vs. Heane*, 2 *Camp. N. P. Rep.*, 415. *Fairchilds vs. Slocum*, 19 *Wend.*, 329. 1 *Pars. on Cont.*, 711.

As to the *onus probandi*, in reply to the appellant's 2nd point, see *Cole vs. Hebb*, 7 *G. & J.*, 39, 40.

COCHRAN, J., delivered the opinion of this Court:

The appellee brought this suit to recover the value of a trunk and contents, lost while being transported from Baltimore to Wilmington, North Carolina.

The evidence shows, that the appellant was proprietor of the Bay line of steamboats running between Baltimore and Portsmouth, Va.; that in March 1857, the appellee, with his daughter and servant, as passengers on through tickets from New York to Wilmington, traveled on one of the appellants' boats from Baltimore to Portsmouth, and thence by the Seaboard & Roanoke Railroad, and the Wilmington Railroad to Wilmington; that his baggage was delivered on board of the boat at Baltimore, and checked for Wilmington, at which place he presented the check offered in evidence, and demanded the trunk, for which it was given; that the trunk called for, could not be found, and that it belonged to him, and contained wearing apparel prepared for his daughter, then nineteen years of age.

The exceptions of the defendant below, present the only

questions necessary to be considered in disposing of the appeals in this case, and they are : 1st, whether there was evidence of a delivery of the trunk to the Seaboard & Roanoke Railroad Company by the appellant, sufficient to go to the jury; and, 2nd, whether, upon the proof, the *appellee* can maintain this action for the value of the trunk and contents thus shown to have been lost.

The evidence relied on by the appellant, as tending to show that the trunk was delivered to the Seaboard & Roanoke Railroad Company, and, for that reason, was legally sufficient to go to the jury, was, that of a clerk employed on one of the appellants' boats, who testified, that "if a trunk is not delivered to the Seaboard & Roanoke Railroad Company at Portsmouth, it is always brought back to the office in Baltimore; that he knew of no such occurrence in March 1857; that the baggage agents on board of the appellants' boats, made lists of the through baggage delivered by them to the Seaboard & Roanoke Railroad Company, and that these lists were not preserved." This testimony proves but little, if anything more, than the appellants' usual or customary course of dealing with baggage received for transportation, and in that respect, no more than would be presumed of any one engaged in the business of a common carrier. The nature of that kind of undertaking, not only requires, but implies the adoption of some regular method or system in receiving, transporting and preserving such property as the carrier receives in the way of his business; and in this case, without positive proof that the trunk was properly delivered by the appellant at Portsmouth, any presumption that could arise in the appellants' favor, from the evidence in question, would be repelled by one equally strong in favor of the carriers from that point to Wilmington. And, besides, the loss of the trunk under the circumstances shown here, was evidence, so far conclusive of negligence on the part of the appellant, that it could not be rebutted, nor the appellants' liability for the loss discharged, by any general inferences drawn from its mode

or system of business. To effect that result, it was necessary to show by positive proof, that the undertaking to transport and deliver the trunk at Portsmouth, had been fully and completely performed.

For these reasons we hold, that the testimony relied on as evidence, that the trunk was delivered to the next carrier at Portsmouth, was legally insufficient for that purpose, and we think there was no error in so instructing the jury.

The remaining question appears to us to be entirely free from difficulty. The fact that the lost clothing was prepared for the daughter of the appellee, does not, in our opinion, divest him of the right to recover its value in this action. If we go further, even than the evidence warrants us in doing, and concede that the exclusive right of using, and in that way the sole and exclusive right of consuming the clothing contained in the lost trunk, was vested in her, yet, looking to the appellee's legal obligation to provide for her, we should be constrained to hold, that he had such an interest or property in the lost clothing, as would enable him to maintain an action to recover its value. The loss complained of, was not so much a loss to the daughter, as to the father, who, by the nature of his obligation to her, was bound to make a new provision for her, and in that way bear the actual burden of the loss sustained. This point, so far as we have been able to discover, does not appear to have been considered or raised in any decided case, and in the absence of authority to the contrary, we adopt the conclusion stated, as most consistent with the general doctrines pertaining to the rights of parties so related. The question does not, however, depend on these considerations alone. The contract for the transportation was made with the appellee; the checks for the baggage, including that of the lost trunk, were delivered to him, and as holder of the checks, which took the place of a bill of lading, he was entitled as consignee, as well as upon the contract made with him, to demand a performance of the contract by the ap-

pellant, or upon its default, to recover the damages result-ing therefrom. *Brooke vs. Pickwick,* 13 *Eng. C. L. Rep.,* 404. *Freeman vs. Birch,* 28 *Eng. C. L. Rep.,* 326. *Moore vs. Wilson,* 1 *Term Rep.,* 659. *Griffith vs. Ingleden,* 6 *Serg. & Rawle.,* 429. 13 *Wend.,* 611.

We think, the rulings to which these exceptions were taken, were correct. The questions raised upon the cross-appeal of the plaintiff below, are important, but it will not be necessary to consider them, as the judgment must be affirmed upon our review of the exceptions of the defend-ant.

*Judgment affirmed.*

(Decided July 12th, 1865.)