\*THE PHILADELPHIA, WILMINGTON AND **330**
BALTIMORE RAIL ROAD COMPANY *v.*
CHARLOTTE C. HARPER.

CHARLOTTE C. HARPER *v.* THE PHILADELPHIA,
WILMINGTON AND BALTIMORE
RAIL ROAD COMPANY.

*Decided June 27th, 1868.*

COMMON CARRIERS ; LIABILITY FOR BAGGAGE ; LOSS BY PUBLIC
ENEMY ; BURDEN OF PROOF. INSTRUCTIONS ; IN LANGUAGE OF COURT ;
PRAYERS BY CONSENT ; REFUSAL OF CORRECT PRAYER.

H. procured a through ticket of the Philadelphia, Wilmington and Baltimore Rail Road Co. from Baltimore to New York, and a through check for her baggage. At Magnolia Station, on said rail road, the train was captured by Confederate cavalry, and the baggage being first removed, the cars were burnt. Subsequently the trunks of H. were placed aboard the United States Gunboat Juniata and taken to Perryville, a station on said rail road. An arrangement was subsisting at the time between the Philadelphia, Wilmington and Baltimore Rail Road Co., the Camden and Amboy Rail Road Co., and the New Jersey Rail Road and Transportation Co., by which a system of through travel between Baltimore and New York was established. Through tickets were issued, and through checks were delivered at either end. The three parties to the arrangement were separate and independent corporations. On her arrival at New York, H. delivered her baggage checks to Dodd's expressman—Dodd's Express Company being employed by the New Jersey Rail Road and Transportation Co. as its agent for the receipt and delivery of baggage on its arrival, by the through line, at New York. At New York H. received five of her trunks—the sixth was not delivered. In an action against the Rail

Road Company for the value of the missing trunk and its contents, *Held*:

That the defendant is exempt from all responsibility for damage caused by the public enemy. (*a*)                    pp. 340, 339

That its liability for the safe transportation of the baggage of the plaintiff, was confined to the limits of its own road, and it was bound only for the safe and prompt delivery to the agent of the connecting company on the line of travel. (*b*)                    pp. 340, 339

**331**    *That if the defendant had possession of the trunk at Perryville, the burden of proof was on it to show that the same was carried safely to its terminus in Philadelphia, and there delivered promptly to the Rail Road Company, whose duty it was to take charge of the trunk to be transported to New York.                    pp. 340, 334

And unless the trunk was so delivered, the plaintiff was entitled to recover the value of the same and its contents, provided it was never delivered to the plaintiff, upon demand being made therefor.       ·

p. 340, (334)

It is competent for the court below to reject the prayers offered, and grant instructions to the jury in its own language; and where these are correct and cover the whole ground, the judgment will not be reversed, though some of the prayers might have been properly granted. (*c*)

p. 338

An instruction granted by consent, cannot be objected to in the appellate court. (*d*)                    p. 339

An appellant is not entitled to a reversal where no injury has been done him by the action of the court below. (*e*)                    p. 338

---

(*a*)   See *B. & O. R. R. Co. v. Green*, 25 Md. 72; as to the liability of innkeepers for baggage, see cases cited in note (*a*) to *Pettigrew v. Barnum*, 11 Md. 434; *Maltby v. Chapman*, 25 Md. 310; *Triebert v. Burrows*, 27 Md. 148.

(*b*)   As to the liability of a carrier for acts committed beyond its own lines, see *Baltimore Steam Packet Co. v. Smith*, 23 Md. 403, notes.

(*c*)   A court may reject all prayers and instruct the jury in its own words, or grant prayers with such explanations or qualifications as may be necessary to a proper understanding of the law of the case; *Keener v. Harrod*, 2 Md. 63, note (*e*). The practice by which courts instruct the jury upon the law of the case, upon the whole testimony without regard to the particular form or structure of the prayers presented by counsel, is approved by the Court of Appeals, in *Key v. Dent*, 6 Md. 150. See also *Storr v. James*, 84 Md. 282. And when instructions granted by the court give to the party the benefit of all the law asked by his own prayers, he cannot be heard to object to such instructions because they do not give more; *Repp v. Berger*, 60 Md. 14.

(*d*)   See *Baugher v. Wilkins*, 16 Md. 35-36, note (*d*); *Inloes v. Am. Exchange Bank*, 11 Md. 173-174, note (*d*), as to admitted facts.

(*e*)   See *Keener v. Harrod*, 2 Md. 63.

Cross appeals from the Superior Court of Baltimore City.

On the 9th of September, 1864, Mrs. Harper, the appellee in the first of these appeals, brought suit against the Rail Road Company to recover the value of a lost trunk and its contents, which had been delivered at Baltimore to the appellant, to be transported to New York as her baggage. The evidence showed that, in July, 1864, the Philadelphia, Wilmington and Baltimore Rail Road Company were the proprietors of cars, engaged in transporting passengers and freight, as common carriers, between Baltimore and Philadelphia, and in the prosecution of their business had made agreement with the Camden and Amboy Rail Road Company and the New Jersey Rail Road and Transportation Company, by which through tickets from Baltimore to New York were issued to passengers, and their baggage checked through; that each company furnished its share of through cars, both for passengers and baggage, and each paid its share of the expenses of the through baggage masters, and received its share of the proceeds of sale of tickets, in proportion to the number of miles traveled on said roads, respectively. That Mrs. Harper procured through tickets for herself and family from Baltimore to New York, on the 11th of July, *1864, and delivered to the Philadelphia, Wil- **332** mington and Baltimore Rail Road Company six trunks, containing wearing apparel of herself and of her minor grand-children; that at Magnolia Station the train upon which she was traveling was stopped by Major Gilmor and a force under him, in the service of the Confederate States, the baggage taken out, and the cars destroyed by fire; that all of the trunks of the plaintiff were safely taken out, were sent to the station, and were subsequently placed on board of the United States gunboat Juniata, by the servants of the defendant, and transported to Perryville, a station of the Philadelphia, Wilmington and Baltimore Rail Road, on the Susquehanna river; that she was therefrom transported to New York, where five of her trunks were delivered to her, but the sixth was not delivered, and when demanded by her agent, several times, after intervals of two or three days, he was informed that it " could not be found."

There was no evidence to show what became of the trunk at Perryville, but some days afterward it reached New York, having been opened and damaged to an extent unknown to the

plaintiff, and was at the trial of the case below, in the custody of the defendant. The route traveled at that time from Baltimore to New York, was from Baltimore to Gray's Ferry, on the defendant's road, thence around Philadelphia, over parts of the Westchester and Media, the Pennsylvania Central and Reading Rail Roads to Richmond Junction, on the Philadelphia and Trenton Rail Road and on said road to the Delaware river, at Trenton, from Trenton on the Camden and Amboy Rail Road to New Brunswick, and thence on the New Jersey Rail Road to New York. The Camden and Amboy Rail Road Company worked the Philadelphia and Trenton Road, although it was owned by another company.

The plaintiff offered four prayers, and the defendant offered seven, all of which the court (Martin, J.,) rejected, and gave the following instructions:

1st. I instruct the jury, that if they shall find from the evidence in the cause, that the plaintiff procured, in the City

**333**  *of Baltimore, on the 11th of July, 1864, a through ticket to the City of New York, and that she started in the train of that morning, in one of the cars of the defendant, with a certain trunk as a part of her baggage, for which she had received a baggage check marked No. 1336, and shall find, from the evidence, that such through ticket was of the form and character as the through ticket which has been offered in evidence in this case, and shall further find from the evidence in the cause, that such through ticket was issued by the authority of the defendant, of the Camden and Amboy Rail Road Company, and of the New Jersey Rail Road and Transportation Company, in virtue of an arrangement before that time made, and then subsisting between said companies, and shall further find, that said several companies were separate and independent companies; and shall further find from the evidence in the cause, that the prompt transportation of the plaintiff and her baggage from Baltimore to New York, was prevented by an incursion of the public enemy on said day, by which the train was stopped at Magnolia, and the baggage removed from the cars, and that the cars themselves were destroyed by fire, and that much of the baggage was carried off, and part thereof greatly injured; and shall further find that afterwards, and without any neglect or unavoidable delay on the part of the de-

fendant, or its servants or agents, except such delay as the jury may find from the evidence in the cause was occasioned by the incursion of the public enemy as above stated, the baggage of the plaintiff, so far as not carried off by the public enemy or others, was forwarded over the road of the defendant, and was carried safely by the defendant to their terminus at Philadelphia, and that it was there delivered by the defendant safely and with all possible dispatch to the Rail Road Company, which the jury shall find was the company that ought to have carried the trunk to New York, if the journey had not been interrupted, for the purpose of having it transported to New York; and that the defendant had not before or at the time of the commencement *of this suit, since the delivery of **334** said trunk as aforesaid, if the jury shall find such delivery to the company, which the jury may find was the company that ought to have carried the said trunk to New York, if the journey had not been interrupted, for the purpose of being transported to New York, any possession of, or control over, said trunk of the plaintiff, then the plaintiff is not entitled to recover in this case as against this defendant, the value of said trunk and its contents.

But I also instruct the jury, that if they find from the evidence that the trunk in question was in the possession and under the control of the defendant at Perryville, then the burden of proof is on the defendant to show, that the said trunk was carried in safety by the defendant to their terminus in Philadelphia, and that it was there delivered by the defendant safely and with all possible dispatch, to the Rail Road Company which the jury may find was the company that ought to have carried the trunk to New York, if the journey had not been interrupted, for the purpose of having it transported to New York; and that unless the jury find that the said trunk was so delivered, the plaintiff is entitled to recover the value of the said trunk and its contents, provided the jury find that the said trunk was never delivered to the plaintiff, and that a demand for the said trunk was made by the plaintiff or her agent, as proved by the plaintiff's witnesses. The amount which the plaintiff is entitled to recover, if the jury shall find a verdict for her under the first instruction, is to be governed by the rule as stated in the second instruction.

2nd. That if the jury shall find from the evidence, that the through ticket was purchased by the plaintiff as mentioned in the first instruction, then the plaintiff is not entitled to recover in this case as against the defendant, in case the jury shall find for the plaintiff, any amount beyond the sum of one hundred dollars, with interest thereon from the date of the demand for **335** said trunk, in case such a demand shall be *found by the jury to have been made; even if the jury shall find from the evidence, that said trunk and its contents were of greater value than the sum of $100, unless the jury shall find from the evidence that there was want of ordinary care on the part of the defendant in regard to the plaintiff's trunk, by which the plaintiff has suffered loss or damage.

To the giving of these instructions and the refusal of the court to grant the defendant's prayers, the defendant excepted, and the verdict and judgment being for the plaintiff, the defendant appealed. The plaintiff also excepted to the refusal of the court to grant the prayers offered by her, and she likewise appealed.

The cause was argued before Bartol, C. J., Brent, Miller and Alvey, JJ.

*William Reynolds, Jr.,* and *William Schley,* for the Rail Road Company:

Whilst the first instruction, in the main, is admitted to be unexceptionable, yet it applies to the defendant a more rigorous rule, than, under the circumstances, ought to have been prescribed. It makes it essential to the defense to establish that the plaintiff's baggage, upon its arrival in Philadelphia, was delivered, with *all possible dispatch,* to the connecting company; and directs the jury that unless they shall find that the trunk in question was "so delivered," the plaintiff was entitled to recover the value of said trunk and its contents. *Faulkner v. Wright,* 1 Rice, 116; *Parsons v. Hardy,* 14 Wend. 217; *Cheviot v. Brooks,* 1 John. 368.

The second instruction speaks of a "demand for said trunk." The demand was made at New York, upon Dodd's Express Company. The plaintiff, in her evidence, speaks of a request,

by her, made to one of the directors of the defendant to have the trunk looked up and restored to her. But the only proper *demand of which there is any evidence, was made at **336** Dodd's Express room, where the check was produced. A director of a rail road company is not *ex-officio* a baggage master, nor the agent to receive or deliver baggage. As the evidence showed no other demand than on Dodd's Express Company, the jury, under this instruction, were permitted to regard said demand as of efficacy against the defendant, in assessing the amount of damages. An instruction which submits to the jury the finding of a fact, of which there is no evidence legally sufficient, is erroneous. *Gaither v. Myrick,* 9 Md. 113; *Hagan v. Hendry,* 18 Md. 177; *Pierce v. Negro John,* 6 Md. 28; *Preston v. Leighton,* 6 Md. 88.

The second instruction, in other respects, was vague and indefinite. It speaks of want of ordinary care on the part of the defendant, in regard to the plaintiff's trunk. There is no particularity. Want of *ordinary care* in what respect? The jury were left at large to speculate and follow their own notions, under such a latitudinous instruction. *Key v. Dent,* 6 Md. 142. In leaving to the jury the question of ordinary care, the Judge submitted a question of law. *Handy v. Johnson,* 5 Md. 450; *Cook v. Carroll,* 6 Md. 104.

The rail road company is not responsible for the acts of the Confederate cavalry; nor for the consequences necessarily, or naturally resulting from those acts. They were acts of the public enemy.

The responsibility of the defendant, as a carrier, ceased on delivery of the trunk into the charge of the Camden and Amboy Rail Road Company, if such delivery were made without unnecessary delay. See cases cited in *Balt. St. Packet Co. v. Smith,* 23 Md. 403.

*William Pinkney Whyte,* for Mrs. Harper:

The instructions of the court were correct, as far as they went, though they did not give the plaintiff all to which she *was entitled, as the law of the case, and which had been **337** embodied in the prayers offered in her behalf. The defendant received under the first instruction all that it asked in its first prayer, rejected by the court, only because the instruction cov-

ered the ground taken in the prayer, and therefore, there is no just complaint on its part.

Notwithstanding all the days and inconvenience caused by the incursion of the public enemy, the proof had shown that the trunk in question had been, *on the same day,* delivered to and taken into possession by the servants of the defendant, at Perryville, so that it was bound to prove a delivery to the next connecting road, according to the terms of its contract, and that safely and with all possible dispatch. The burden of proof was upon it. *Dill v. R. R. Co.* 7 Rich. 158; Pierce on Railways, 500, 501; *Muschamp v. R. R. Co.,* 8 Mees. & Wels. 421; *Balt. St. Packet Co. v. Smith,* 23 Md. 409.

The second instruction involved the amount, which the jury could allow as the value of the trunk and its contents, under the limitation upon the ticket. The limitation of $100 was allowed to prevail, "unless the jury shall find from the evidence, that there was want of ordinary care on the part of the defendant in regard to the plaintiff's trunk, by which the plaintiff has suffered loss or damage." This very qualification was added to the defendant's second prayer by its counsel; and so the second instruction is not liable to exception by the defendant, because it states the law almost in *totidem verbis,* as the second prayer itself. This qualification of the limitation was clearly correct. No case can be found maintaining an adverse doctrine. *Steam Nav. Co. v. Bank,* 6 How. 344.

The third prayer of the defendant was properly rejected, because there was no proof, whatever, that any person not in the employ of the defendant took charge of the baggage on the gunboat, and therefore, the prayer was based upon statements, of which there was no proof, and was calculated to **338** *mislead the jury, and ought not to have been granted. *Long v. Eakle,* 4 Md. 457; *Hagan v. Hendry,* 18 Md. 192.

The defendant's fourth prayer was properly rejected, because the injury to the trunk was placed upon the hypothesis, that it occurred while in the hands of parties not in the employ of the company; and that if subsequently delivered to the next connecting road, the defendant was not liable. The entire proof on both sides nullified any such theory; so far from it, after the trunk in question had been taken from the cars safely, it was taken into possession by the agents of the defendant, and so continued, at Perryville, when the witnesses lost sight of it.

Bartol, C. J., delivered the opinion of the court.

In this case the court below rejected the prayers offered on both sides, and gave two instructions to the jury. To this ruling, both parties reserved exceptions, and both have appealed; but, as the plaintiff recovered judgment, and does not ask for a reversal on her appeal, and as we have come to the conclusion the judgment must be affirmed, it is only necessary to express our opinion upon the questions presented by the defendant's appeal. These arise upon the defendant's prayers and the court's instructions to the jury.

It is the settled law of this court, that it is competent for the court below to reject the prayers offered and grant instructions to the jury in its own language, and where these are correct, and cover the whole ground, the judgment will not be reversed, though some of the prayers might have been properly granted. *Mut. Safety Ins. Co. v. Cohen,* 3 Gill, 459; *Hall v. Hall,* 6 G. & J. 404; *Keener v. Harrod,* 2 Md. 63, 73, 74; *N. Y. Ins. Co. v. Flack,* 3 Md. 341; *Baltimore v. Penington,* 15 Md. 12, 17. It is also well settled that an appellant is not entitled to ask a reversal where no injury has been done him by the action of the court below.

In this case, the material propositions presented in the defendant's prayers were substantially granted in the court's *instructions to the jury. By those instructions the **339** Rail Road Company was exempted from all responsibility for damage caused by the public enemy; its liability for the safe transportation of the plaintiff's baggage was confined to the limits of its own road, and it was held bound only for the safe and prompt delivery to the agents of the connecting company on the line of travel. And the defendant got the benefit of exemption from all liability beyond the sum of one hundred dollars, unless the jury should find from the evidence the loss occurred from the want of ordinary care on the part of the defendant. Whether the court below was correct in allowing to the defendant the benefit of these limitations upon its liability as a common carrier, we express no opinion; the defendant has no right to complain of them on this appeal. It is proper to notice the particular points made by the appellant's counsel in the argument. The court's instruction imposed the duty upon

the defendant to prove that the baggage in question had been delivered "*with all possible dispatch*" at the terminus of its road, to the agents of the connecting company. It has been objected that the words, "all possible dispatch," imposed upon the defendant a greater responsibility than the law requires. But this is the measure of responsibility assumed by the defendant itself. In its first prayer, the instruction asked was in these words, "safely and with all possible dispatch," and the court having instructed the jury in this particular, in the terms asked for by the defendant, it is precluded from now making this objection.

In *Baugher v. Wilkins*, 16 Md. 35, it was decided that an instruction granted by consent cannot be objected to in the appellate court.

The same observation may be applied to the objection made by the appellant's counsel, to that part of the instruction which left it to the jury to find whether the loss was occasioned by the "want of ordinary care on the part of the defendant," which it is said was too vague and indefinite. But in this respect, too, the instruction adopted the very language employed in the defendant's second prayer.

**340**    *The first, second and sixth prayers of the defendant being substantially granted by the court's instruction, the appellant cannot complain of their rejection. The third prayer was properly refused because it contained the hypothesis that the loss of the trunk was occasioned by its having been temporarily in the possession and control of persons not connected with the defendant or in its service—of which there was no evidence before the jury. The fourth and fifth prayers were properly refused for a similar reason, there being no evidence that the trunk was safely delivered by the defendant to the next carrier on the line of travel. Under the decision in *Balt. St. Packet Co. v. Smith*, 23 Md. 402, the *onus* of proof of such delivery was on the defendant. There was no error in refusing the defendant's seventh prayer. The proper place for the plaintiff to demand her trunk was at New York, the end of her journey, to which place she had taken her tickets, and had her baggage checked. She was not bound to look after its safety during the route. The evidence shows that a demand was made by her in New York, and the trunk having been lost, the

responsibility for its loss rested upon the defendant, especially in the absence of proof of a safe transportation over its road, and a safe and prompt delivery to the agents of the next carrier on the route. 23 Md. 402. This was the purport of the court's instructions, and the defendant has no good ground to complain of the action of the court below; the judgment will, therefore, be affirmed.      *Judgment affirmed.*

---

*EDWARD O. HINKLEY, Surviving Executor of **341** Leonard Jarvis, and Others *v.* JEREMIAH WHEELWRIGHT, Administrator *c. t. a.* of Nathaniel J. Wyeth.

*Decided June 27th, 1868.*

Mortgages and conditional sales; absolute deeds intended merely as security; intent of parties; relief in equity; purchase of equity of redemption by mortgagor.

In Equity, a conveyance, whatever form it may assume, will be treated as a mortgage, whenever it appears to have been taken as a security for an existing debt or a contemporaneous loan, and the inclination of the courts is, in doubtful cases, so to treat it, and allow the grantor to redeem. (a)      p. 348

There is no principle of Law or Equity which prevents parties, capable of acting for themselves, from making conditional contracts for the sale of their property, real or personal, or which forbids a vendor to make an absolute conveyance of the property sold, subject to an agreement, that he shall be entitled to a re-conveyance upon the repayment of the purchase money or any other sum certain, on or before a fixed day, or to make any other stipulations by which the conveyance shall become void, or remain absolute.      p. 348

The fact that the parties stand in the relation of mortgagor and mortgagee, does not prevent their dealing with each other, as vendor and purchaser of the equity of redemption. Such transactions will not be set aside unless for manifest unfairness or inadequacy of consideration.      pp. 348-349

---

(a) See cases cited in note (b) to *Farrell v. Bean*, 10 Md. 217.

See *Hicks v. Hicks*, 5 G. & J. 47; *Baugher v. Merryman*, 32 Md. 185; *Russell v. Southard*, 12 Howard, 154.