## SAMUEL R. SMITH *vs.* WILLIAM CRICHTON.

*Non-joinder of proper parties as Plaintiffs—Oral Instructions to the Jury.*

In an action *ex-contractu,* the non-joinder of a party who should have been joined as a co-plaintiff, may be taken advantage of by the defendant at the trial under the general issue; and this rule is not affected by the provisions of the Code, Art. 75, secs. 26, 28. It is within the discretion of the Court to give instructions to the jury orally or in writing; but where verbal instructions are given, it is the right of the party who desires to except thereto, to have them reduced to writing, so that they may be reviewed on appeal.

APPEAL from the Baltimore City Court.

This was an action of *assumpsit* instituted by the appellee to recover the balance of a loan made to the appellant. The pleas were never indebted, never promised, and set-off—the character of the last plea will be found sufficiently disclosed in the second prayer of the appellant.

*Exception.* The defendant offered the following prayers:

1st. That if the jury shall believe from the evidence, that at the time the alleged cause of action accrued, the plaintiff and his son, Malcolm Crichton, were co-partners, and that said cause of action was a partnership transaction, then the plaintiff is not entitled to recover under the pleadings in this action.

2d. That if they shall find that in 1865, the plaintiff was a stockholder in the Chesapeake Oil Company, and in the Maryland Copper Company, and was also President of the said first named corporation, and Director and afterwards President of the said last named corporation, and that at the instance of the plaintiff or his authorized agent, defendant was induced to purchase certain shares of the capital stock of the said Chesapeake Oil Company, and to borrow of the plaintiff the sum of $300 for the purpose of paying in part for the said stock, and that to secure the same, the defendant transferred to plaintiff the certificates of all the shares so purchased, and also further to secure said loan, transferred the certificate for 250 shares in

the Maryland Copper Company, the property of the defendant, and that afterwards and while said shares were so held in pledge by plaintiff, defendant requested plaintiff or his authorized agent, to sell said stock or any portion thereof at its then market value, and apply the proceeds thereof to the payment of said debt, and that plaintiff or his said agent assented thereto, that then it was the duty of the plaintiff to sell the same or such portion thereof as he agreed to sell without unreasonable delay. And if the jury shall further find that plaintiff altogether failed to sell said stock or any portion thereof, and that damage was sustained by the defendant from such failure by any subsequent depreciation in the value of said stock, without fault of the defendant after the lapse of sufficient time for affecting said sale, that then defendant is entitled to have *recouped* in this action the amount of such damage as the jury may find him to have sustained as aforesaid.

3d. If the jury shall find the facts stated in the second prayer, no verbal declarations which the jury may believe from the evidence were subsequently made by the defendant, can operate as a waiver of his right of *recoupment* as therein stated, unless the jury shall also find that such declarations were made upon some consideration thereto, moving from the plaintiff, or that some action was taken or forborne to be taken by the plaintiff, or some liability incurred by him upon the faith of such declarations.

All of which the Court rejected, and instructed the jury, verbally, to the following effect:

That although it is the right of the pawnee of stock plegded as collateral security for advances, to sell the same in open market at his own option when the debt matures, yet it is not his duty so to do; that the party pawning might at that time redeem the stock himself, but that he could not compel the party to whom he had pledged the stock to sell the same; and that if damage resulted from the omission of the plaintiff to sell in this instance the stock in question, no recovery could be had against him for such omission by the defendant.

After these instructions were given, and before the jury had agreed upon their verdict, the foreman rose and stated that there was a difference of opinion among the jury, some considering that the Court's instructions were positive, that the verdict must be for the plaintiff, and others maintaining that the jury could still exercise their discretion.

The Court then instructed the jury that unless they should find fraud on the part of the plaintiff, their verdict must be for the plaintiff, and there was no evidence in the case from which fraud could be inferred.

To the rejection of his prayers, and to the verbal instructions granted by the Court, the defendant excepted, and the verdict and judgment being against him he appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER, ALVEY and ROBINSON, J.

*John V. L. Findlay* and *Chas. E. Phelps,* for the appellant.

The defendant excepted to the instructions granted, not only as instructions, but as *verbal* instructions. The question is therefore distinctly presented, whether instructions in that form are legitimate under Maryland practice, when counsel have applied for instructions *in writing?*

The method of separation of law from fact by written prayers and instructions, is not only a distinguishing characteristic of Maryland practice, but by usage, legislation and adjudication is embodied in the law of the State.

The Act of 1825, chap. 117, as construed by this Court, (*Davis vs. Leab,* 2 G. & J., 302; *Penn vs. Flack,* 3 G. & J., 369;) abolished general prayers which presented no specific propositions of law. Under this construction, the practice of presenting points for decision in the form of carefully digested hypothetical instructions has grown to a special science. It was, at one time, denied that a Court could grant any instructions of its own accord unless in the terms prayed for at the bar. *Keener vs. Harrod,* 2 Md., 73; *Coates vs. Sangston,* 5

---

Smith *vs.* Crichton.

---

*Md.*, 133; *Key vs. Dent*, 6 *Md.*, 142; *Snively vs. Fahnestock*, 18 *Md.*, 391, and *Higgins vs. Carlton*, 28 *Md.*, 115, recognize the right of the Court to reject the prayers which may be offered, and instruct the jury in their own words, but they furnish no sanction, direct or indirect, for the practice of delivering oral speeches from the bench in response to prayers for written instructions.

The whole current of Maryland decisions since 1825, show with uniform consistency that prayers and instructions to the jury in the contemplation of the common law of the State, are written documents as fully as any part of the pleadings. *Evans' Practice*, 364, 380, 401.

*John Henry Keene, Jr.*, for the appellee.

STEWART, J., delivered the opinion of the Court.

Exceptions have been taken by the appellant in this case to the ruling of the Court below, in the refusal to grant his three several prayers, and to the verbal instructions given, including the form, as well as the substance of them.

The first prayer involves the question whether the plaintiff, having sued the defendant upon a cause of action alleged to be due alone to the plaintiff, can recover under the pleadings, if, upon proof, it appears to have been a claim due the partnership, of which the plaintiff was a member; and whether the defendant can avail himself of such defence unless by plea in abatement.

It is a well settled principle that all the parties composing a firm must be named as plaintiffs, unless they are dormant partners, and the omission so to describe them may be taken advantage of by the defendant, under the plea of the general issue, and in actions upon contract, if the cause of action be joint, all the parties, if alive, must join, and where the action is brought by one of several with whom the contract was made, the defendant can avail himself of the defect, upon evidence at the trial, under the plea of *non assumpsit*. The *alle-*

*gata* and *probata* must agree, and the plaintiff here, claiming in his individual capacity, must sustain his demand as such, and is not entitled to recover upon a cause of action due to him and others, and the pleadings giving notice of the individual account, the defendant has the right to interpose the objection at the trial, under the general issue, to the competency of any such testimony, without resorting to plea in abatement.

This well established rule is not affected by the provisions of the Code, Art. 75, secs. 26–28, in reference to the right of amendment, or by the form of a plea in abatement as prescribed in the 83d division of sec. 22, of the same Article.

Assuming there was conflicting testimony as to the true character of the cause of action, and whether it constituted an individual or partnership account, the purport of which it was the province of the jury to determine, upon pertinent instructions from the Court as to the law applicable thereto when their interposition was invoked, we think there was error in the Court below in the refusal of the defendant's first prayer. *Mitchell vs. Dall,* 2 *H. & G.,* 171; *Armstrong vs. Robinson,* 5 *G. & J.,* 412; *Hoffar vs. Dement,* 5 *Gill,* 132; *Wallis vs. Dilley,* 7 *Md.,* 250, *Oelrichs vs. Artz,* 21 *Md.,* 531.

The second and third prayers of the defendant were properly rejected, because there was no proof in the record to sustain them, or to shew that the plaintiff was responsible to the defendant for not having made sale of the stock referred to therein.

Under such circumstances they were mere abstract propositions, not founded upon any testimony in the cause.

Under the view we have stated as to the error in the refusal of the defendant's first prayer, it becomes unnecessary to review the propositions announced by the Court in the verbal instructions.

The exception as to the form of the instruction, being verbal, when the defendant's prayers were in writing, cannot be supported.

Where the instruction is definite, and contains sound views of the law applicable to the case and intelligible to the jury, it can make no assential difference whether it is communicated to them in writing or orally.

It is true, that in the trial of causes, and the exposition of the law to the jury, the reduction of the instruction to writing is certainly more formal, less liable to hasty error, and may enable the Court the better to mature their views, and more distinctly and formally to express them to the jury as a general rule; but still the law may be sufficiently expounded to the jury through oral instructions. No doubt the Court would not hesitate, where it was requested, and deemed by the counsel to be material, to embody their views in writing, in advance of any oral communication to the jury. This matter, however, is left to the sound discretion of the Court below, and is not the subject of review by this Court.

When verbal instructions are given to the jury, it is certainly the right of the party who desires to except thereto, to have them reduced to writing, so that they may be reviewed on appeal, as was done in the present instance; and when that is the case it is no good cause of complaint, that the Court, in its discretion, chose in the first instance to instruct the jury orally.

*Judgment reversed,*
*and new trial awarded.*

(Decided 30th June, 1870.)