# LILLIAN J. FEINGLOS *v.* JOSEPH WEINER, ET AL.

[No. 5, October Term, 1942.]

*Decided October 28, 1942.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, MARBURY, and GRASON, JJ.

*Joseph Sherbow,* with whom were *Paul L. Cordish* and *Solomon Liss* on the brief, for the appellant.

*Foster H. Fanseen* for the appellees.

SLOAN, J., delivered the opinion of the Court.

This appeal is from a judgment for the defendants, Joseph Weiner and Quality Beef Corporation, in an action by Lillian J. Feinglos, plaintiff, for personal injuries sustained by her, and for damages to her automobile, when it collided with a truck driven by Weiner, who, since suit was brought, has become sole owner of the stock of the Quality Beef Corporation. The collision occurred on the 20th day of June, 1940, on Mt. Royal Avenue, south of and about ninety feet from its intersection with Newington Avenue, in Baltimore. The truck and plaintiff's car were in the same line of traffic, the truck in front. The plaintiff said: "He was a little to our right, slightly." Her daughter, who was driving, said: "The car was about a half a car width to the left of the truck," and she could see ahead two or three blocks, when the truck pulled over in front of her. When four doors, or about ninety feet from the intersection, the truck pulled toward the left of the center of the street (the plaintiff says partly across the center line), which is wide enough for three lanes of traffic in each direction, north and south, preparatory to turning into Newington Avenue, and came to a stop (this fact is undisputed), with the result that the plaintiff's car crashed into the rear of the truck, badly damaging her car and severly injuring her. The plaintiff's daughter said: "This

truck in front of me suddenly made a left turn without any warning. He didn't blow his horn or anything like that. He did not give any other kind of signal that I could see at that time, and I was in a position to have seen it if he had done so." The plaintiff said: "I remember seeing only a part of his car and it was evidently only a little ahead of us. Just how much I could not say. I have not the slightest idea." Asked, "As a matter of fact, Mrs. Feinglos, were you really paying any great amount of attention to him?" she answered, "No, I did not," and later, "Well, I saw that truck ahead of us, but I don't know how far ahead of us it was." The collision happened opposite the house of a Mrs. Bishow, who was very certain she saw everything that occurred, and said: "I saw it going to happen and I saw when it did happen. The crash was due to the fact that the car which was right in back of it could not get out of the way of his truck which as I had said had pulled across the line in front of it. It couldn't get out of the way of the truck, for the truck had come to a complete stop. It had stopped dead, as I say, without any sign, signal or warning that it was going to stop. The car that was behind it hit the truck, this roadster, hit the truck." Her testimony lost its probative force and effect when she said on cross-examination: "The driver did not give any signal of any sort. I am sure of that, certainly. I would judge that he gave none, for he cut right across and stopped."

"Q. Did you notice whether he did? A. No, I did not.

"By the Court: Q. You did not notice whether or not he gave any signal. A. No I did not, for the first time that I noticed the car was when he cut across the traffic."

Asked, "Q. I see. Well, you didn't see the truck at all until it stopped. A. No."

The cutting across was half the width of the car, the plaintiff's daughter having testified that she was following the truck, with the center of her car in line with the left side of the truck. The defendant, Weiner, testified:

"As I approached Newington Avenue, I had my hand out intending to make a left-hand turn. There was southbound traffic. The light up above had just changed and there was a line of southbound traffic there and they were going south at the time and of course I had to allow them to go by first before I could turn and so I came to a stop. I stopped there. I stopped there—it was just a matter of minutes—just parked there a matter of minutes—minutes, yes, sir, when I felt an awful jolt in my back. I mean seconds. I was there a matter of seconds. I felt this jolt as I said and the jolt was so hard that it broke the back of my truck. The back of my seat, I mean."

"Q. Now, Mr. Weiner, it has been testified here that you cut directly out into the other lane of traffic going north without giving any warning—that you cut right out in the lane in front of the car coming from the rear. You remember doing that or not? What have you to say about that? A. No, sir.

"Q. You mean you did not do it? A. No, sir, I didn't. I was traveling parallel with the yellow line in the center of the street, parallel with the center line, within a few feet from it. I didn't notice it exactly, that is the distance I was away from it, but I am sure it was close. I didn't notice the car in back of me at all. I didn't pay any attention to them for I was busy watching the ones in front of me. There was probably traffic going up that way. I didn't pay attention to the other traffic, that is, the traffic behind me."

These are the material and important facts contained in the record. The result, a verdict for the defendant.

Counsel often overlook one important fact in the trial of automobile cases, and that is, that on every jury are some men who drive automobiles, most of them carefully and many of them well. Given the facts accurately, they know whether a collision or injury was the fault of one or the other or both, or neither of them.

After the judgment, the only recourse of the disappointed litigant is to fix the blame for the result on

the trial judge on appeal, whose alleged errors might have improperly influenced the jury in arriving at their conclusion.

There were eleven exceptions noted by the plaintiff: the first, second and third on the evidence, of which the second and third have been abandoned; the fourth, fifth, sixth, seventh and eighth to the refusal to grant the prayers for instructions of the plaintiff; the ninth to remarks of defendant's counsel, of which plaintiff said, "The court made a satisfactory explanation to the jury"; the tenth and eleventh, both of which relate to the court's oral charge, and take up nearly all of the plaintiff's brief, and will be first discussed.

For years, nearly a hundred, the reports of the law cases in this State deal with rulings on the prayers prepared by counsel for the consideration of the trial court. Oral charges according to the common law practice fell into disuse, and only infrequently were there any oral charges discussed in this court, and though it was said they were not improper, their use was never encouraged —rather the reverse. The result was that the trial judge lost the importance which should have been his in the conduct of trials. The matter of oral instructions on both the law and the facts has been considerably discussed at meetings of the Maryland Bar Association, and was the subject of papers by Albert C. Ritchie (afterwards Governor) in 1908; Charles McHenry Howard in 1926; Charles Markell in 1937, and Judge Robert F. Stanton in 1938, all strongly urging the resumption of the practice at the common law. One of the references in the plaintiff's brief is to an article by Federal Circuit Judge Morris A. Soper in VI Maryland Law Review, 35, which begins: "For a long generation the insignificant and ineffectual part played by the Maryland State judge in the jury trial has been the object of trenchant criticism and attack. Powerful addresses have shown that the judge's instructions on the law, consisting of technical requests or prayers prepared by counsel, have not only been the greatest single source of reversible error,

but oftentimes utterly useless and unintelligible to the body to whom they were directed. Instructions on the facts have been conspicuous by their complete absence." The only effective instruction on the facts has been the demurrer to the evidence; that is one of no legally sufficient evidence.

There never was any prohibition against the trial judge instructing the jury on the law. In *Philadelphia, W. & B. R. Co. v. Harper,* 1868, 29 Md. 330, 338, it was said: "It is the settled law of this court that it is competent for the court below to reject the prayers offered and grant instructions to the jury in its own language, and where these are correct, and cover the whole ground, the judgment will not be reversed, though some of the prayers might have been properly granted." See cases there cited. Oral instructions on the law are not encouraged, though not condemned in *Smith v. Crichton,* 1870, 33 Md. 103, 108; *Downey v. Forrester,* 1872, 35 Md. 117, 122; *Hussey v. Ryan,* 1886, 64 Md. 426, 433, 2 A. 729.

The use of oral instructions was discouraged in the case of *Rosenkovitz v. United Rys. & Electric Co.,* 1908, 108 Md. 306, 316, 70 A. 108, 112, where it was said: "While it is clear that the power exists in the courts of submitting an oral instruction in cases where it applies, or may be considered necessary, yet it is a power that should be cautiously exercised, and will be found in practice a dangerous one, and open to abuse. Under our practice it is not to be approved or commended, except to promote the ends of justice as indicated by the cases cited." The tenor of the plaintiff's brief is that oral instructions are just as "dangerous * * * and open to abuse" now as they were to this court in 1908, which evoked the reply from defendant's counsel, that, when you win, the instructions are always good; but when you lose, they are always bad.

The practice at the trial of cases at law has undergone a change, the fruition of many years of agitation by the

Bar, which will result in the restoration of the impor-
tance and consequent responsibility of the trial judge.

The General Assembly by the Act of 1939, Chap. 719,
provided that: "The Court of Appeals is authorized and
requested to prescribe by general rules, the practice
and procedure in all civil actions, both at law and in
equity, in all courts of record throughout the State."
"Such general rules shall be reported to the General
Assembly of Maryland within thirty days after the be-
ginning of its next regular session (1941) and except
as modified or repealed by Act of the General Assembly
shall take effect on the 1st day of September, 1941.
Upon taking effect, such rules and any subsequent amend-
ments or additions thereto, shall supersede any prior in-
consistent public general law, public local law, munici-
pal ordinance or rule of the Court of Appeals or any
other court."

This court, as authorized by the Act, appointed a com-
mittee from the Bar of the State, consisting of one
lawyer from each of the counties of the State and eight
from Baltimore City with the Honorable Samuel K. Den-
nis, Chief Judge of the Supreme Bench of Baltimore as
chairman, which in turn selected Mr. Robert R. Bowie
of Baltimore as reporter. The committee made its re-
port to this court, which adopted every rule except one
(which was not rejected) and made its report to the
General Assembly as required by the Act, and the same
became effective September 1, 1941. Among the rules
so adopted was one calculated and intended to change the
practice with respect to insructions to juries in civil
cases. The rule adopted is as follows:

"Rule 6. Instructions to the Jury.

"(a) Prayers. At the close of the evidence or at such
earlier time during the trial as the court reasonably
directs, any party may file with the court written prayers
that the court instruct the jury on the law as set forth
in the prayers, and shall furnish to all adverse parties
copies of such prayers.

"(b) Instructions. In its instructions to the jury, which may be given either orally or in writing, or both, the court, in its discretion,

"(1) may instruct the jury upon the law of the case, either by granting requested instructions or by giving instructions of its own on particular issues or on the case as a whole, or by several or all of these methods, but need not grant any requested instruction if the matter is fairly covered by instructions actually given; and

"(2) may sum up the evidence, if it instructs the jury that they are to determine for themselves the weight of the evidence and the credit to be given to the witnesses.

"An oral charge need not comply with the technical rules as to prayers.

"(c) Objections. Before the jury retires to consider its verdict, any party may object to any portion of any instruction given or to any omission therefrom or to the failure to give any instruction, stating distinctly the porton or omission or failure to instruct to which he objects and the specific grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

"(d) Appeal. Upon appeal a party, in assigning error in the instructions, shall be restricted to (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct distinctly objected to before the jury retired and (2) the specific grounds of objection distinctly stated at that time; and no other errors or assignments of error in the instructions shall be considered by the Court of Appeals.

The plaintiff here, in her brief, seems to argue against the new rule in favor of the former stiff, stilted, piece-meal prayers which were sometimes offered, and not infrequently, to fortify the party presenting them, in case of their rejection, on appeal, if the jury's answer was adverse. Not only does the plaintiff inveigh against the rule, but says: "The whole charge was so rambling

and argumentative that it was bound to mislead and confuse the jury." The plaintiff questions the choice of the judge's language. We cannot put the trial judge in a straight jacket, and prescribe or adopt a furmula to be used and followed by him. All that we can do is to decide whether he has properly stated the law of the case, and has fairly reviewed the evidence with the natural and logical deductions therefrom, so that the jury may have a clear view of the case, always reminding the jurors that they are the judges of the fact. The whole purpose of the rule is to encourage the trial judge to perform his duty as understood and practiced in the common law courts, as described by Sir Matthew Hale. In his *History of the Common Law*, 291, 292, he said: "Herein he is able in matters of law emerging upon the evidence to direct them; and also, in matters of fact to give them a great light and assistance by weighing the evidence before them, and observing where the question and knot of the business lies, and by showing them his opinion even in matter of fact; which is a great advantage and light to laymen." This is quoted in the case of *Quercia v. United States*, 289 U. S. 466, 468, 77 *L. Ed.* 1321, cited by the plaintiff "as defining the nature of judicial propriety in charges to the jury." In that case in an opinion by Chief Justice Hughes, it was said: "In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important, and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination." The decision in that case, however, cannot be held as authority in this, because the chief offense there was that the trial judge had said to the jury: "I think every single word that man (the defendant) said, except when he agreed with the government's testimony, was a lie"; held not

to have been counteracted by the injunction that it was not binding on the jury; and if they did not agree with it, it was their duty to acquit. One requisite of a charge is that in the review of the evidence and comments thereon it shall be impartial (*Burk v. Maxwell's Adm'rs,* 81 Pa. 139, 153; *Starr v. United States,* 153 U. S. 614, 38 *L. Ed.* 841), and correctly states the applicable law and the question for our decision is whether the charge here attacked meets these tests.

The plaintiff submitted four written prayers, the subject of the fourth, fifth, sixth and seventh exceptions. They were all refused and were all stock prayers which have been approved in scores of negligence cases. They were all included in the oral instructions of the trial judge. But Rule 6 (b) (1) says the trial court "need not grant any requested instruction if the matter is fairly covered by instructions actually given." *Smith v. Crichton,* 33 Md. 103, 108; *Philadelphia, W. & B. R. Co. v. Hooper,* 29 Md. 330, 338.

The trial judge read to the jury the rules of the road from Section 235, Article 56 of the Code, 1939, that, "The operator of a vehicle about to stop or turn to the left shall give a signal to those behind by extending or raising the hand," the defendant testifying that he did this, and the driver of plaintiff's car that he did not, and that part of the section which reads: "At the intersection of public highways all vehicles shall keep to the right of the center of such highways, and close to the right-hand side of the road when turning to the right, and pass to the right of the center of such intersection when turning to the left, and before making such turn to the left, shall keep as close to the center on the right-hand side of the road as practicable."

The plaintiff's chief complaints to the charge and noted at the time, were that the court unduly stressed the burden which the plaintiff carried, and in connection therewith the "hurdles" which she had to overcome to entitle her to recover. We cannot lay down a rule which will prescribe the language which the trial judge must

use in his charge. The rules require the judge to use understandable English, and when he used the word "hurdle," he wasn't talking about a foot-race or a steeple-chase, but that in the use of the term he was. referring to the burden which the plaintiff must overcome to show that the negligence of the defendant was the proximate cause of the collision, and that the failure to signal her or anyone following him would be a negligent act entitling her to recover. *Kelly v. Huber Baking Co.*, 145 Md. 321, 334, 335, 125 A. 782. With equal emphasis the court told the jury that the second hurdle was that imposing the burden on the defendant to prove contributory negligence.

The third "hurdle" was that of concurrent negligence, and the plaintiff criticizes the court's manner and language in presenting this to the jury, and particularly that part where he said: "Did the plaintiff fail in any of the duties which are imposed upon her, and, if she did, then, no matter if her negligence were only a 10 per cent. contribution to the accident and the other fellow was guilty of 90 per cent. of it, the plaintiff still cannot recover. For, as I have said, if there is any negligence upon either side then that side cannot recover." The complaint is that the court did not say that the percentages given were for the purpose of illustration, and not necessarily shown by the evidence. From what had been said immediately preceding, the jury knew, if they understood anything, that it was for illustration, for it immediately followed the statement: "That where there is negligence proven on both sides neither side can recover against the other; that wherever an accident happens through joint negligence of both parties then neither party can recover against the other, no matter how large the proportion of the negligence may be on either side as against that of the other side, neither may recover. One cannot recover against the other. That is the rule as to contributory negligence."

"As to that, of course, the burden of showing contributory negligence is upon the defendant, just as, in

the first instance, the burden is upon the plaintiff to show negligence upon the part of the defendant before the plaintiff can recover. It must, of course, be reasonable evidence, evidence which is satisfactory to your minds." The court warned and impressed upon the jury that they, and not the court, were the judges of the fact.

On the whole, we do not find that the charge was unfair or prejudicial, or the statement of the law incorrect.

The only objection urged to the evidence was to the question on cross-examination of defendant's daughter: "Well, if he (Weiner) had stopped there at the corner instead of say some feet south of it, you would still have plowed into him just the same, wouldn't you?" It may very well be that the jury's verdict is the answer to this question. As we see it it made no difference where the defendant stopped, if he gave the timely warning required by law to traffic behind him. The plaintiff's duty was to look and have her car at such distance and under such control as to have avoided collision. It was the defendant's duty to protect her by giving timely warning of his intention to stop, whether he intended to stop or turn to the left, and then, if he did this for the plaintiff to protect herself.

Finding the court's charge did not violate the rule respecting an oral charge, that the plaintiff's prayers were incorporated in the charge, and the ruling on the only question objected to and argued on the brief, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*