## FRANK CAPLE *v.* HAMILTON AMOSS, Etc.

[No. 9, October Term, 1942.]

*Decided October 28, 1942.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, MARBURY, and GRASON, JJ.

*Foster H. Fanseen* and *Philip S. Ball* for the appellant.

*Simon E. Soboloff,* with whom were *Ruth S. Newman* and *William Taft Feldman* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appellee, as plaintiff, recovered a judgment against the appellant for damages suffered in a collision of their automobiles at a street intersection in Balimore City, and on appeal the errors alleged are in an instruction by the court on a possible last clear chance for the defendant to avoid the collision, and in rulings on evidence.

On October 23, 1940, at about 6 o'clock in the morning, the plaintiff, a farmer, was driving his car south on Harford Avenue toward Madison Street, going to seek laborers, and the car of Caple, a Ford car, driven by a man named Dudley, was moving east on Madison Street, carrying six colored laborers to work at the Bethlehem Steel Works. Coming toward the right of the other, Caple's car, of course, had the right of way. Amoss' contention, however, is that this car on the right of way came at an excessive rate of speed, unanticipated by him. The men in Caple's car testified that Amoss himself came at an excessive speed, appearing suddenly out of Harford Avenue, and collided as a consequence. Dudley stopped, they said, just before the collision, and

Amoss made a quick swerve to his left, and swung the rear of his car into that of Caple. Witnesses for both parties agreed that the Caple car stopped at the spot, either before or at the time of the accident.

Amoss' estimates of speed and distances are criticized as impossible. He could not see to his right until he came from behind a board fence surrounding buildings being torn down at the northwest corner, and part of the sidewalk, and then he saw the lights of the defendant's car, he estimated, 175 feet to the right. He then proceeded across, going from fifteen to twenty miles an hour, until he reached the center of Madison Street, and then, looking again, he saw the Caple car sixty or seventy-five feet away from him. He increased his speed somewhat, to pass, and came into collision with the other car when his own was five feet beyond the south curb line of the street. The Caple car was on the right-hand side of Madison Street. The width of the street from curb to curb is estimated variously from thirty to thirty-nine feet, the later estimate by measurement. And thus Amoss, by his own testimony, would, at fifteen to twenty miles an hour, with some increase of speed, have crossed in a little more than a second. He would have reached the center of Madison Street in a little more than half a second. Yet, in that half second and more, he estimates, Caple's car came 100 feet to within sixty to seventy-five feet of him, and to do so it must have come at the rate of nearly 100 miles an hour. If it had come all of 175 feet to the point of collision while Amoss was crossing it must have moved at a rate of about eighty miles an hour. Amoss' car continued after the collision until it struck a parked truck opposite the third house beyond the corner. Such extravagant estimates are common in the quick movements which result in collisions, and they furnish at least an unsatisfactory basis for an adjudication.

The appellant argues that this, the only evidence offered to prove negligence in the driving of Caple's car, is, according to the formula found in our decisions, "so slight and inconclusive that no rational mind can

accept it as a sufficient basis for finding the fact which it is offered to prove." 2 *Poe, Pleading and Practice,* 5th Ed., Sec. 293; *Maas v. Sevick,* 179 Md. 491, 495, 20 A. 2d 159. The conclusion toward which the argument tends is that a verdict should have been directed in the defendant's favor because of a legal insufficiency of the evidence to support a recovery, but after a prayer for such a direction had been refused at the close of the plaintiff's testimony in chief, the defendant offered testimony on his own behalf, and then, at the conclusion of all the testimony did not again ask the direction. In that situation a previous exception to the refusal is considered waived. *Barabasz v. Kabat,* 91 Md. 53, 46 A. 337; *North Chesapeake Beach Land & Improvement Co. v. Cochran,* 156 Md. 524, 529, 144 A. 505. In the absence of the direction on the court's own motion (2 *Poe, Pleading and Practice, Sec.* 293), it is necessary that the ruling should be asked by the defendant, and the question of sufficiency of all the evidence in the case be thus raised and submitted for a ruling. Code, 1939, Art. 5, Sec. 10.

The trial court, instructing the jury on negligence on a last clear chance in driving defendant's car, omitted any reference to the driver's seeing or being able to see in the exercise of ordinary care that Amoss was not in control of his own safety, and able of his own effort to keep clear of the oncoming car, and the sufficiency of evidence that Amoss was seen or could have been seen so out of control is questioned. The court's charge on the point was:

"Assuming, for the purpose of the argument, that you find that the plaintiff was negligent, you find that the greater weight of the testimony convinces you that the plaintiff did not exercise the care and caution that an ordinary prudent man would exercise, but that, after his negligence had placed him in a position of danger, the defendant was so far away from the scene of the accident that he still by the exercise of ordinary care, not doing anything extraordinary that an ordinarily prudent person would not do, but still by the exercise

of ordinary care could have averted the accident, it is his duty to do so. . * * * even if you find that plaintiff, was negligent in placing himself in a position of danger, if you also find and finally decide that, after plaintiff was in a position of danger, defendant by the exercise of ordinary care still had time to avert the accident, then the burden is on the plaintiff to convince you of that by the greater weight of testimony, and, if you find that, then your verdict would be for the plaintiff, even though the plaintiff was guilty of negligence in putting himself in a position of danger."

It is true that if the two vehicles came together when Amoss was in control of his own safety by the exercise of ordinary care, and so could have kept clear of the car on the right of way, the case was at most the ordinary one of concurrent negligence. And if he was not so in control of his safety by the exercise of ordinary care, the fact must have been apparent or there would have been no last clear chance on which to charge the other driver with the last negligence. *Legum v. State,* 167 Md. 339, 352, 173 A. 565; *Askin v. Long,* 176 Md. 545, 551, 6 A. 2d 246; *Stafford v. Zake,* 179 Md. 460, 463, 20 A. 2d 144. The defendant's attorney excepted to this portion of the charge only because he did not believe "there was any evidence in this case which would warrant such instruction to the jury." And the objection denies the sufficiency of the evidence to support this finding of negligence on a last clear chance. Amoss' own testimony would tend to negative that finding, for he said he was driving at the moderate rate of speed stated, and increased it to pass the car which he saw coming, and was thus in complete control. Dudley, however, testified that, "He was coming at a rate of speed I knew he couldn't stop. * * * I knew he couldn't stop, so I did. * * * I stopped, and just at the split second I stopped he cut for me and that allowed the hind end of his car to swing" and strike the other car.

After the court's charge had been given, the jury returned, asking an explanation of this particular part,

and it was read to them. The fact emphasizes the importance of a correct understanding on their part of the principle referred to. In the opinion of this court the charge would not give them that understanding. Dudley's statement that he saw Amoss was coming too fast to stop, so Dudley stopped, fails to furnish the necessary evidence that Dudley saw Amoss' supposed high speed, and inability to keep clear of the other car, in time to avoid the contact. Dudley said he saw Amoss' inability to stop only when he (Dudley) stopped; and that would fall short of informing the jury that he might in the exercise of ordinary care have seen that inability in time to stop short of the point of collision, or turn away. It does not appear to have been apparent any earlier. Nor would the evidence of it be furnished by the mere fact that if Caple's car had been in fact 175 feet west of the crossing when Amoss started over it could have been stopped in time. The distance was of course sufficient for stopping, but the fact would not tend to prove that the driver could have seen in time that Amoss could not be expected to keep himself clear. *Gitomir v. United Railways Co.*, 157 Md. 464, 469,, 146 A. 279; *Storrs v. Hink*, 167 Md. 194, 208, 173 A. 66. The distinction observed may be a narrow one, but it is important in the application of the principle, and the court concludes that the jury would not by the charge given them be advised of the essential discussed. And, confining the inquiry to the exact objection made, the evidence sufficient to support a finding of that essential does not exist. The exception is therefore found well taken. Inconsistencies in the plaintiff's estimates need not be further considered; on a retrial he can be more exact.

The exceptions to rulings on evidence present objections to a lack of definiteness in the testimony of a physician for the plaintiff, especially in view of the fact that the plaintiff was an elderly man suffering before the accident with arthritis, and that element in his condition needed to be distinguished. The objections seem

to demand more, we think, than the situation reasonably permitted, and the court finds no reversible error in these exceptions.

*Judgment   reversed,   and   a   new   trial awarded, with costs.*