ABRAHAM ASKIN ET AL. *v.* ROBERT W. LONG.

[No. 18, April Term, 1939.]

*Decided May 17th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Foster H. Fanseen* and *Philip S. Ball,* for the appellants.

*Howard A. Sweeten,* with whom were *Albert A. Levin* and *Weinberg, Sweeten & Green* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

The plaintiff, Robert W. Long, appellee, charges the defendants, Abraham Askin and Samuel Askin, partners trading as Askin Brothers Company, defendants, appellants, with the negligent driving of their automobile at the intersection of Greenway and Thirty-ninth Street in Baltimore, whereby the plaintiff, at the time driving a light delivery truck belonging to himself and his brother, was injured. From a judgment for the plaintiff, the defendants appeal. The charge is that the plaintiff's injuries were caused by the defendants' automobile being driven by their employee in a "negligent, reckless and careless manner and at a high and unlawful rate of speed." Their reliance is on speed in excess of that allowed by law, and that the violation of that statute was the proximate cause of the accident, while the defendants contend that the proximate cause was the failure of the plaintiff, as required by the statute, to yield the right of way to defendants' driver.

The accident occurred on January 7th, 1938, between one and two o'clock in the afternoon, the weather clear,

the street dry. The plaintiff was going eastward on Thirty-ninth Street toward Greenway. The defendants' car, driven by Richard Hawkins, was going north on Greenway. Under the law, Act of 1929, ch. 224 (Code [Supp. 1935], art. 56, sec. 209), the defendants' car had the right of way, there being no signal lights or boulevard stop signs at the intersection. It was "agreed that there are slow signs there, both ways." Both cars were going straight through the intersection. Both streets are eighty feet wide; the distance between curbs on Thirty-ninth Street being twenty-four feet, on Greenway thirty feet. As soon as the plaintiff reached the building line, the drivers could see each other's car at a distance of 200 feet to the plaintiff's right and the defendants' left, at which time the plaintiff would be about forty feet from the intersection, and the defendant about 150 feet, according to the map in the record. If the houses at the intersection sit back from the building line, the distance of visibility would be increased, but as we are not informed as to the location of the improvements, we must take the building line as determining the situation in that respect.

The plaintiff's reliance is upon the cases of *Taxicab Company v. Ottenritter,* 151 Md. 525, 135 A. 587; *Hendler Creamery Co. v. Friedman,* 160 Md. 526, 154 A. 93; and *Jersey Ice Cream Co. v. Bach,* 161 Md. 285, 157 A. 277, wherein suits were brought by plaintiffs who had the right of way rule against them, and it was declared that the rule was not absolute, because the question must be determined by the facts and circumstances in each case. *Yellow Cab Co. v. Lacy,* 165 Md. 588, 170 A. 190; *Blinder v. Monaghan,* 171 Md. 77, 188 A. 31; *Warner v. Markoe,* 171 Md. 351, 189 A. 260; *Carlin v. Worthington,* 172 Md. 505, 192 A. 356. But by this we must not be understood as ignoring the rule, for in *Chiswell v. Nichols,* 137 Md. 291, 306, 112 A. 363, 368, we said: "The first and chief thought and care of the driver of a vehicle approaching an intersecting road should be given to those vehicles that might be approaching him from the

right, and, for the safety of those using the public roads, too much stress cannot be laid upon the importance of so doing. At the same time the traveler is not, because of the statute, looking to the general safety and welfare of others as well as himself, altogether relieved of the necessity of observing the condition of the road to his left with a view of ascertaining whether or not the road is clear and free of persons and vehicles approaching from that direction." See, also, *Warner v. Markoe,* 171 Md. 351, 189 A. 260.

It must be admitted that, under the cases cited, the question, though by statute made one of law, usually resolves itself into one of fact.

What are the facts, according to the record?

The only witness testifying to the collision on behalf of the plaintiff is the plaintiff himself, and it is his testimony on which he relies. He testified: "I was coming over Thirty-ninth Street and I was going to my lunch, going home, and when I got to the intersection of Greenway I looked at my right and I saw this car approaching around 200 to 225 feet down Greenway, and I had plenty of time to go on and I started across the intersection, and when I got half through I heard the screech of brakes and he hit into me; if he had gone straight he would have missed me, but he swung in the back of the truck and he struck me." This is not consistent with his statement that when the cars collided the front of his truck was five feet past the east curb on Greenway, and the photograph in evidence by the plaintiff shows the contact on the plaintiff's truck to have been on the right rear part of the machine, so that if his statement be true his truck should have been hit in the middle. He approached Greenway at "about twenty miles an hour."

"Q. Where were you when you first saw this automobile? A. I was just entering from the other side to go through the intersection to the other side. Q. Where was the other automobile when you first saw it? A. I guess 120 or 125—when I first got there he was about 200 feet"; where he first saw it it was 200 feet away.

"Q. Had you reached the intersection or just where were you? A. At that time I was going over my intersection because I slowed the truck down. Q. How far was he away from you at that time? A. I guess 120 feet. Q. You said when you first saw him he was 200 feet away? A. Yes, sir, when I went to make the intersection he was coming towards me. * * * Q. How far was he away? A. About 120 feet when I was going over the intersection. * * * Q. Where was this car when you first saw it 200 feet away? A. He was 120 feet—he was coming at such a rate of speed. * * * Q. Where was your car with respect to Thirty-ninth and Greenway when you first saw the other car 200 feet way? A. I was right here at this building line (the space from building line to curb is twenty-five feet)."

He said that when he entered the intersection he had slowed down to fifteen miles an hour, which he testified was the speed at which he crossed the intersection.

On cross-examination the plaintiff said: "I could not judge the speed of the other car—could not estimate it." What he evidently resorts to is to build up a case of defendants' negligence by his statements of distances, which will not stand close analysis. One cannot tell whether he first saw the defendants' car at 200 feet or 120 feet, or was unaware of its nearness until he heard the screeching of its brakes. From the time the front of the truck left the west curb on Greenway until the rear of it cleared the curb on the east side he would travel not over fifty feet, which would take, at fifteen miles an hour, two and one-third seconds. In the same time the defendants' truck would have had to travel 120 feet at the rate of thirty-five miles an hour, or 200 feet at about sixty miles an hour. The plaintiff does not testify as to the speed of the defendants' car, but he tried to leave the impression that it was traveling at a much greater speed than permitted by law, and that such violation was the proximate cause of the collision. It does not "follow that every violation of the rule of the road by the vehicle approaching from the right results in de-

priving it of the right of way." *Hendler Creamery Co. v. Friedman,* 160 Md. 526, 530, 154 A. 93, 95; *Kelly v. Huber Baking Co.,* 145 Md. 321, 325, 334, 125 A. 782.

While the plaintiff "could not judge the speed of the other car," there was positive and uncontradicted evidence as to its speed. Defendants' driver, Richard Hawkins, said he was going at the time twenty to twenty-five miles an hour; "* * * had not gone over thirty miles all the way up." Edgar Deskins testified that he followed Hawkins two blocks up Greenway at a distance of 100 to 150 feet and that at no time did he (Deskins) go over twenty-five miles an hour, and "* * * I was about—just about 250 feet when I seen a big blur like start out from the west side which turned out to be the truck driven by Mr. Long."

Hawkins' story of the collision is: "I was going north on Greenway, so when I got to Thirty-ninth and Greenway I looked to my right and I saw nothing coming, and I look to my left, and I saw a truck approaching me about—I had about ten feet to stop when I saw the truck and I could not stop in ten feet. Q. As you arrived at the corner where was the other truck? A. We were both right there about the same time. I judge the truck was going faster than I was. The truck came from my left. I put on my brake. The other car made no effort to stop; he swerved to his left like that (indicating) and I hit him on the right (rear) fender. At this time he was going about twenty or twenty-five. * * * Q. Did you or not stop at the point of impact? A. I stopped still."

Small dents on the right rear fender and on the body in the rear of the fender show clearly that if Hawkins had come to a stop in a foot less there would not have been a collision. The damage to the defendants' car was to the left front fender and the left end of the bumper, accounted for by a police officer, arriving at the scene shortly after the accident, who found skid marks ending at the intersection and "wavering down Greenway," fourteen or fifteen paces, indicating also that, while

Hawkins was more than ten feet away when he became aware of the Long truck in the intersection, he did not see it until the danger of collision was imminent.

On this evidence this court is of the opinion that the case is one of concurrent negligence, disentitling each party to recover from the other as a matter of law. *Warner v. Markoe*, 171 Md. 351, 358, 189 A. 260. It was easy for each driver to have seen the other's car at a distance of about 200 feet. The defendants' driver testified that the plaintiff's truck came into his view with such suddenness that he was not aware of its presence until he was but ten feet way. His estimate of distance, if the skid marks were his, show that he made an effort to stop at a much greater distance, but still far short of the range of his vision, had he been looking, and still too near to avert the collision. His defense is that the plaintiff's truck, which was the unfavored vehicle, came into the intersection at such speed that the collision was unavoidable so far as the defendants were concerned. The plaintiff's testimony, which, under the demurrer prayer "A" of the defendants must be assumed to be true, is that he was driving at from fifteen to twenty miles an hour, and if this be true there was ample time and distance for the defendants' driver, had he looked, to have avoided the collision. *Longenecker v. Zanghi*, 175 Md. 307, 2 A. 2nd. 20. The fact that he looked and did not see, when if he had looked he must have seen, will not excuse one whose duty it was to act on actualities the existence of which were apparent to any one in possession of his senses. *Gitomir v. United Rwys. & Elec. Co.*, 157 Md. 464, 469, 146 A. 279.

On the other hand, the plaintiff's evidence was so inconclusive, contradictory, and uncertain as to not be accepted as the basis of a legal conclusion. *Slacum v. Jolley*, 153 Md. 343, 351, 138 A. 244. According to the plaintiff's testimony, as disclosed by the record, we cannot tell where the defendants' car was when he saw it, or whether he was aware of it at all until he heard its brakes screech when it was beginning to slide into his

truck. That, according to the police officer, was when the car was fourteen or fifteen paces from the center of Thirty-ninth Street, or about forty-five feet away, and the truck was wholly in the intersection. He testified that he could not estimate its speed, and in that he was probably right, as one is in no position to judge the speed of an oncoming car. One has to see a car go by to even be prepared to make a guess at its speed. According to the rule as to vehicles approaching an intersection from right to left, the plaintiff was the unfavored, the defendant the favored, driver. The rule was designed to prevent collisions and accidents. When there is a collision at such a place, and the unfavored driver sues, he must show not only negligence on the part of the defendant without which the accident would not have happened, but also that he was careful and cautious. His care and caution must be determined by the facts, and not by the mere assertion that he was careful, but by what he did to guard against and prevent collision with favored traffic. Our conclusion from the record is that the plaintiff was not without blame, and that his carelessness and obliviousness of what was going on at the intersection were contributing causes, and that the defendants' prayer for a directed verdict on the ground of contributory negligence should have been granted, and for this reason the judgment appealed from should be reversed.

*Judgment reversed with costs, without a new trial.*