RICHARDSON, USE OF HERSELF AND NATIONAL GUILD INSURANCE COMPANY *v.* FLEETWAY CABS, INC.

[No. 37, October Term, 1951.]

*Decided December 6, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Eugene A. Alexander, III,* with whom were *Isidore E. Levin* and *Constance K. Putzel* on the brief, for the appellant.

*Benjamin C. Howard,* with whom was *George Farber* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment rendered in an automobile accident case. After the jury retired, the foreman of the jury in conference with the Court stated that the jury had agreed that the accident resulted from the negligence of both drivers and asked for further instructions. After these were given the jury returned a verdict for the appellee. Appellant then filed a motion for judgment N. O. V. and for a new trial, both of which were overruled. From a judgment for costs for the appellee, the appellant appeals.

The case comes to this Court on the failure of the trial judge to instruct the jury: (1) that the proximate cause of the accident was the failure of the appellee to yield the right of way to the appellant as requested in appellant's A prayer; and (2) that there was "no evidence in this case legally sufficient to show that the Plaintiff was guilty of any negligence contributing to the happening of the accident complained of," as requested in appellant's B prayer. Our disposal of the

B prayer will make it unnecessary to discuss the A prayer.

As the appellant contends that as a matter of law the appellant was not guilty of any contributory negligence we will discuss the evidence in a light most favorable to the appellee.

On March 17, 1950, about 8 A.M. Mrs. Lillian Richardson, the appellant, was driving a 1949 Oldsmobile in an easterly direction on Baker Street, which runs east and west, in Baltimore. The day was clear and the streets were dry. Charles Strouse, the driver of appellee's taxicab, was driving south on Division Street, which runs north and south, he said about fifteen or twenty miles an hour, and when he reached the corner of Baker and Division Streets, each about 42 feet wide, he looked to his right and saw the Oldsmobile at a distance of fifty to seventy-five feet. He did not see the sign on Division Street, "Dangerous Intersection, Slow". There was nothing coming from his left. Assuming that he had enough time to cross Baker Street, he proceeded across. After he started across Baker Street and had reached the south curb of Baker Street he looked to his right again and Mrs. Richardson was approximately twenty feet from him. He then blew his horn and drove straight ahead, trying to get out of her path. When he blew his horn she veered to her right. When the front of his cab had gotten five or six feet beyond the intersection, the Oldsmobile struck the rear of his cab between the center of the right rear wheel and the right rear bumper. All four doors flew open. Another witness testified that after the collision a woman passenger in the cab was in the middle of the street bleeding and the male passenger was on the left side with his head against the curb unconscious. Strouse said his cab started swaying from side to side. He tried to keep it from turning over. When the cab stopped it had turned around in a semi-circle and was facing northwest. When he got out of the cab the Oldsmobile had one wheel on the sidewalk. "It had smashed into

the back of another car parked at the southeast curb of Baker Street and had driven this parked car into the back of a parked truck."

Officer Lupinek testified that from his investigation the point of impact between the vehicles was thirteen feet east of the west curb of Division Street and thirteen feet north of the south curb of Baker Street. The cab proceeded fifty-six feet from the point of impact south on Division Street.

Mrs. Richardson, the appellant, a school teacher in Baltimore, testified that she was driving east on Baker Street between twelve and fifteen miles an hour. As she approached Division Street at about the building line, she looked to her right and "there was nothing coming". She then looked to her left and saw a taxicab about forty or fifty feet up Division Street. When she first saw the taxicab she did not have the impression at that time that the cab was going unusually fast. She said: "If I had been impressed with that I would have stopped, right of way or no right of way. * * * It was too far up, it was a little too far up for me to get that impression first." She had good brakes. When she reached the intersection she slowed down to about ten or twelve miles an hour. She said she could have stopped her car, "rather quickly. I mean rapidly, fast." She started across the intersection. Suddenly there was a terrific impact. "The next I saw of the cab we had a collision. After the collision my car continued across Baker Street and almost hit a lamp post at the corner. I tried to control it and managed to move the wheel sufficiently to avoid the lamp post but I slid into a parked car."

Code, 1947 Supplement, Article 66½, Section 176 provides in part: "(Vehicle Approaching or Entering Intersection.) (a) Except as hereinafter provided, all vehicles or trackless trolleys shall have the right of way over other vehicles or trackless trolleys approaching at intersecting public roads from the left, and shall give right of way to those approaching from the right." This statute does not specify how close the vehicle ap-

proaching from the right must be to the intersection in order to acquire the right of way over the vehicle approaching from the left. Neither does it specify how close the vehicle from the left must be to the intersection or possible point of collision before yielding the right of way. This statutory rule is not a peremptory command but rather a cautionary guide. Whether a vehicle approaching from the right is near enough to the intersection to acquire the right of way over the vehicle approaching from the left must be determined from the circumstances of the particular case, such as, the width of the intersecting streets, speed of the vehicles and other circumstances. *Taxicab Co. v. Otteneritter*, 151 Md. 525, 531, 532, 135 A. 587; *Wlodkowski v. Yerkaitis*, 190 Md. 128, 132, 57 A. 2d 792; *Legum v. Hough*, 192 Md. 1, 63 A. 2d 316.

Even though the appellant had the right of way, she was not relieved from the duty to use reasonable care to avoid a collision with the unfavored vehicle. The favored driver, approaching the intersection should proceed at a lawful rate of speed, keep his car under control so as to be able to stop on short notice, and look carefully to avoid injury to others. Of course, if the favored driver continues his course without exercising reasonable care, he may be liable although he has the right of way. *Wlodkowski v. Yerkaitis, supra,* 190 Md. at pages 131, 132, 57 A. 2d at page 795. It was said in that case at page 134: "No absolute rule declaring what constitutes contributory negligence can be formulated to apply to all cases, because, like primary negligence, it is relative and not absolute, and it necessarily depends upon the circumstances of each particular case. Unless the action of the plaintiff relied on as amounting to contributory negligence is established by clear and uncontradicted evidence, the case should not be withdrawn from the jury, and where the nature of the act relied on to establish contributory negligence can be determined only from all the circumstances surrounding the accident it is within the province of the jury to characterize it.

Where there is a conflict of evidence as to material facts relied on to establish contributory negligence, or the act is of such a nature that reasonable minds, after considering all the circumstances surrounding the happening of the accident, may draw different conclusions as to whether it constituted contributory negligence, the court should not withdraw the case from the consideration of the jury. *Waltring v. James,* 136 Md. 406, 414, 111 A. 125; *Baltimore Transit Co. v. State,* to *Use of Schriefer,* 184 Md. 250, 40 A. 2d 678; *Crunkilton v. Hook,* 185 Md. 1, 42 A. 2d 517. We specifically hold that where, in an action for damages resulting from an automobile collision at a street intersection, the evidence is conflicting, or more than one inference may be reasonably drawn therefrom, the question of contributory negligence is one of fact for the jury."

In this case, Mrs. Richardson, the appellant, admitted that as she approached the building line at the intersection she saw the cab about forty or fifty feet to her left. At that time it was too far away for her to determine whether the cab was coming unusually fast. She had good brakes and could have stopped quickly. She slowed down to about ten miles an hour and started across the intersection. The next time she saw the cab was at the moment of the terrific collision. Strouse said that when he reached the intersection, Mrs. Richardson was fifty to seventy-five feet to his right and thinking he had ample time to cross he proceeded ahead. When he was almost across the intersection he looked again and Mrs. Richardson was about twenty feet from him. He blew his horn, driving straight and she then veered to her right. There is corroboration of his testimony that when the front of his cab had gotten five or six feet beyond the intersection, the cab was hit a terrific blow between the center of the right rear wheel and the right rear bumper by the front of Mrs. Richardson's car.

The jury found that both were negligent. This conclusion might have been reached from the evidence,

because the jury considered that Mrs. Richardson was too far from the intersection when the cab arrived there and that the cab was too far in the intersection at that time to have entitled Mrs. Richardson to the right of way. There was a conflict in the evidence as to how far each driver was from the intersection when the other entered it. The jury might also have concluded from the evidence that she was negligent in proceeding across the intersection, not knowing the speed of the cab at a distance of forty or fifty feet until she looked again. The jury might also have concluded from the evidence that she was negligent when at the last moment she veered her car to the right, and if she had driven straight ahead or veered to the left the collision would not have occurred at a point where the cab, sixteen feet in length, was five or six feet beyond the intersection. Contributory negligence of the appellant in this case was a jury question and the trial judge was correct in denying appellant's B prayer and submitting the case to the jury.

The appellant also excepts to the action of the trial court in subsequently charging the jury on the question of burden of proof without restating to the jury the right of way rule. In the original charge to the jury the trial judge among other things instructed the jury as to the right of way statute, *supra,* and the right of way rule.

The appellant contends that "after the jury had retired for its consideration of this case, the foreman of the jury in conference with the Court stated that the jury had agreed that the accident resulted from the negligence of both drivers and that they wanted to know whether or not in such a situation they could award the Plaintiff damages because of her injuries and the damages sustained by her. The Court then charged the jury again relative to the burden of proof on the Plaintiff and stated 'The burden is on the Plaintiff to prove that this accident resulted from the negligence of the cab operator without any negligence on her part thereto contributing * * *'.

Counsel for the Plaintiff then excepted to the Court's charging the jury on the question of burden of proof and specifically that the Court did not again inform the jury that the burden of proof of contributory negligence was on the Defendant. Counsel also excepted because the Court did not repeat to the jury the law covering the right-of-way rule. His Honor, Judge Manley, then recalled the jury and instructed them as to the burden of proof for contributory negligence and stated that the jury could consider all the evidence in the case in determining contributory negligence and that the burden of proof did not necessarily mean that it must come from the Defendant himself. The Court did not charge the jury relative to the right-of-way rule. Whereupon, counsel for the Plaintiff excepted to the refusal of the Court to so do."

There is no contention here that the instruction given the jury was erroneous. The only objection is that parts of the charge were not repeated. "We cannot put the trial judge in a straight jacket, and prescribe or adopt a formula to be used and followed by him. All that we can do is to decide whether he has properly stated the law of the case, and has fairly reviewed the evidence with the natural and logical deductions therefrom, so that the jury may have a clear view of the case, always reminding the jurors that they are the judges of the fact." *Feinglos v. Weiner,* 181 Md. 38, 46, 28 A. 2d 577, 581; *Larkin v. Smith,* 183 Md. 274, 284, 37 A. 2d 340; *Fisher v. Baltimore Transit Co.,* 184 Md. 399, 402, 41 A. 2d 297. The judgment will be affirmed.

*Judgment affirmed, with costs.*