VALCOURT ET AL. *v.* ROSS ET AL.
(Two Appeals in One Record)

[No. 36, October Term, 1952.]

18

*Decided November 11, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*J. Gilbert Prendergast,* with whom were *Clark, Thomsen & Smith* on the brief, for Joseph Valcourt.

Submitted on brief by *Leonard H. Wonneman* and *Wonneman & Styles* for Mary Smith Valcourt.

*Paul F. Due* and *Wilbur D. Preston, Jr.,* with whom were *Due, Nickerson, Whiteford & Taylor* on the brief, for Louis Gogel.

HAMMOND, J., delivered the opinion of the Court.

Two appeals are presented here from judgments entered by the court, sitting without a jury, in favor of the respective appellees. The case arose from an automobile accident at a street intersection, in which an automobile, operated by Louis Gogel, one of the appellees, and another driven by Joseph Valcourt, one of the appellants, collided. As a result of the collision, the automobile driven by Valcourt struck the standing automobile of Albert Ross, the other appellee. Ross brought suit to recover his property damage against Louis Gogel and Joseph Valcourt. Thereupon, Mary Smith Valcourt, the owner of the car driven by Joseph Valcourt, her husband, intervened as a third party plaintiff, alleging a claim for slight personal injuries and property damage against Gogel. Ross was admittedly an innocent bystander, and no claim has been asserted against him. Judgment in his favor was entered against Joseph Valcourt.

The accident occurred in early December, 1950. The day was rainy and there was a drizzle at the time of the accident. A witness described the day as a misty one. A certain mistiness still persists as to the actual facts of the accident.

It is clear that Joseph Valcourt was driving his wife's machine and that she was sitting in the front seat, holding their child. Mrs. Loretta Smith was a passenger in the rear seat. Where they were going, whence they had come, or why, the record does not disclose. It does disclose that all imputation of negligence was disclaimed, counsel for Gogel having in open court specifically so stated. In the view we take of the case, the question of whether negligence could be imputed to Mrs. Valcourt as the owner of the car is not significant. Joseph Valcourt testified that he was going south on Pulaski Street and as he approached Hollins, looked to his left and saw no one, and looked to his right and saw Gogel's car coming up some 200 feet away at a speed of some 25 to 30 miles an hour. He had stopped,

he says, at the curb line of the intersection, started across, had got in second gear and was about to shift to first. As he was about three-quarters of the way across the intersection, he was struck in the right rear by Gogel's car

Gogel, on the other hand, testifies that he was going east on Hollins Street, approaching Pulaski Street at a speed of some 15 or 20 miles an hour. As he approached Pulaski Street, he looked to his right and left—he cannot recall whether he looked first to his right or first to his left—but he does say that as he looked, there was not any moving traffic. When he first observed Valcourt's car, it was out in front of him. He says that it came "out of a clear sky with all of the speed one could think". He applied his brakes and turned to the left, but as he puts it, the right of his radiator and the front part of his car were struck by the Valcourt car.

Neither Mrs. Valcourt nor Mrs. Smith gave testimony which added materially to a determination of what actually occurred. Ross, likewise, did not observe enough to be helpful. He was driving north on Pulaski and stopped his car about a car's length south of Hollins Street so that he could get out and wipe the windshield. He says that as he was wiping his windshield, he heard a bang, looked up and saw Valcourt's car headed towards him, saw it hit his left front fender with its left rear and bounce off to another car which was parked facing south across the street. Valcourt says that he plowed into the second standing car. In response to a question as to how far he had knocked the second car, he answered: "I didn't put it nowhere. By that time I had the car under control of my brake." Ross believes that he had been standing still some two minutes when he was struck. He had seen the Valcourt car coming down from Baltimore Street, but had not followed its progress.

There is no traffic light or other traffic control at the intersection involved. This being so, the right of way

rule provided by the Maryland Motor Vehicle Law, Article 66½, Section 196 (Code, 1951 Ed.) prevails. When vehicles approach an intersection under such circumstances that a collision is likely to occur, it is the duty, under the statute, of the driver approaching from the left to yield the right of way to the vehicle approaching from the right. The statute does not lay down a standard which determines how near a vehicle approaching from the right must be in order to have the right of way in respect to a vehicle approaching from the left. Nor does it say how close the vehicle approaching from the left must be to the possible point of the collision in order that it must favor the vehicle approaching from the right. The determination of whether or not there has been violation of the statute, which has been the proximate cause of an accident, must be determined in each case on the particular facts in the environment involved.

The general rule in effect, in the absence of statute, gives the right of way to the first arrival at the intersection. The statute qualifies this rule but does not do away with it completely. As this Court said in *Askin v. Long,* 176 Md. 545, at page 548, 6 A. 2d 246, at page 247, in setting forth that the right of way rule is not absolute, "It must be admitted that, under the cases cited, the question, though by statute made one of law, usually resolves itself into one of fact". The later cases show that the principle of this statement is still acted upon by this Court. In *Wlodkowski v. Yerkaitis,* 190 Md. 128, 57 A. 2d 792, the plaintiff was driving east and saw a southbound car some 30 feet away. Thinking he could cross ahead of it, he released his brakes, accelerated the car, and hit the other car. The unfavored car testified that when he entered the intersection, the plaintiff was 25 feet west of the intersection and he assumed that he would stop, and when he did not, he increased his speed but was unable to avoid the collision. The jury found for the defendant, the unfavored car, the lower court refused a motion for a

judgment *n.o.v.* and this Court affirmed. In so doing, it adopted as a statement of the law, a quotation from a New York case (*Ward v. Clark,* 232 N. Y. 195, 133 N. E. 443, 444) in which Judge Cardozo delivered the opinion, as follows: "The privilege thus conferred is not inflexible and absolute. A right of way, like a burden of proof, will establish precedence when rights might otherwise be balanced. It helps us little when without it the balance would be unequal. A right of way might turn the scales if, when the plaintiff started to cross, the cars had been equidistant, or nearly so, from the point of collision, due regard being had also for the speed of their approach. Even with the distances what they were, it was an element which the triers of the facts were to consider in their estimate of conduct."

In *Legum v. Hough,* 192 Md. 1, 63 A. 2d 316, there was a verdict for the plaintiff and again a motion for judgment N. O. V. was overruled. The parties agreed that the sole question was whether the plaintiff was guilty of contributory negligence. His testimony was that when the front of his car was 8 feet west of the nearest curb of the intersection, he looked to his right and saw the other car 120 or 125 feet away. He could not say how fast it was going, but thought he could safely cross before it reached the intersection. When he was two-thirds of the way across, he heard brakes squealing and just about that time the other car struck him back of the right front wheel. This Court again construed the right of way Section of the Code and, relying, among other cases, upon *Taxicab Co. v. Ottenritter,* 151 Md. 525, 135 A. 587, and *Wlodkowski v. Yerkaitis, supra,* found that the plaintiff, the unfavored driver, could not be said to be guilty of contributory negligence as a matter of law.

In *Graff v. Davidson Transfer & Storage Co.,* 192 Md. 632, 65 A. 2d 566, this Court declined to rule as a matter of law that the favored vehicle was not guilty of negligence. See also *Kremer v. Fleetway Cab Co.,* 197 Md.

557, 79 A. 2d 853, and *Richardson v. Fleetway Cab Co.,* 198 Md. 512, 84 A. 2d 910, for discussions under the facts involved as to the relative rights and obligations of drivers approaching from the left and the right, and reiteration that factual questions of relative speed and distance cannot be decided ordinarily as questions of law.

The appellants rely strongly on Gogel's testimony that he looked to his right and to his left and saw no moving traffic. They say that this is obviously incredible because if he looked, he must have seen the Valcourt car. While in *Askin v. Long, supra,* the Court did refer to this rule and, to some extent, rely on it, yet both before and after the case, it has concluded that it is not a rule generally applicable to cases of automobile collisions at street intersections.

In *Taxicab Co. v. Ottenritter, supra,* the contention was that the plaintiff was guilty of negligence as a matter of law because he said that, after he had, passed the building line, he could have seen the taxi which struck him approaching from the right but although he looked, he did not. This Court rejected that argument, saying:

"* * * it was not necessary for the plaintiff to look as far as his eye could reach to his right before proceeding across the intersecting street. His duty in that respect was performed if he looked sufficiently far to his right to discover that there was no traffic approaching from that direction within a distance that would be traversed by a vehicle driven at a speed permitted by the law. He was not required to look always to his right while crossing the street as he had to avoid endangering travel ahead of him or approaching from his left."

In *Legum v. Hough, supra,* again it was pointed out, in response to the contention that the plaintiff in that case had failed to continue to look to his right, that "a driver of a car cannot see in all directions simultaneously. It is his duty to look to his left and ahead

as well as to the right." See also *Kremer v. Fleetway Cab Co., supra.*

The lower court, in reaching its verdicts for the defendant Gogel, the appellee here, seemingly found, as the trier of the facts, that the Valcourt car was going at a far greater speed than had been testified to by the plaintiffs and that this was the proximate cause of the accident. Undoubtedly, as is particularly true in cases of collision at intersections, strong arguments can be made as to other proximate causes and as to negligence on the part of the defendant, Gogel, and lack of it on the part of the plaintiff, Valcourt. In almost all negligence cases, whenever a court rules on a question as a matter of law, it expressly or impliedly makes certain determinations as to what is a proper standard of conduct under the circumstances involved. Generally, however, the standards to be applied both as to negligence and contributory negligence are essentially relative and peculiarly suited to be ruled on by the trier of the facts. As this Court said in *Brown v. Bendix Aviation Corp.,* 187 Md. 613, 619, 51 A. 2d 292, 295, in discussing concepts of negligence and contributory negligence:

"* * * it is only where the minds of reasonable men cannot differ that the Court is justified in deciding the question as a matter of law."

The minor tragedy under decision was re-acted by the original cast before the trial judge. He could better evaluate the actors and could more certainly pierce the mistiness surrounding them than can we. The Rule of this Court—Part Three, III, Rule 9C—is that, in trials in cases of law heard by the court sitting without a jury, this Court may review both the law and the evidence with the qualification that, "the judgment of the trial court shall not be set aside on the evidence unless clearly erroneous". Here, we cannot say that the minds of reasonable men could not differ as to the answer to the conflict of evidence on material facts, nor

can we say that the determination of the trial court was clearly erroneous.

For these reasons, we affirm the judgments below.

*Judgments affirmed with costs.*