NOCAR ᴇᴛ ᴠɪʀ *v.* GREENBERG ᴇᴛ ᴀʟ.

[No. 219, October Term, 1955.]

*Decided July 12, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Harry Leeward Katz* and *John Carroll Weiss, Jr.,* with whom were *Ginsberg & Ginsberg* on the brief, for appellants.

*J. Gilbert Prendergast,* with whom were *Clark, Smith & Prendergast* on the brief, for appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Helen D. Nocar and Charles J. Nocar, her husband, from a judgment for Helen D. Nocar in the amount of $500.00, with costs, and for Charles J. Nocar in the amount of $150.00, with costs, for injuries sustained by Helen D. Nocar.

The defendants and appellees owned a shopping center which included three stores on the south side of Tenth Avenue, a public highway, in Brooklyn, Anne Arundel County. They rented these three stores. In front of these stores and well within their property the appellees had built an eight foot walkway for access to their stores at the end of which was an alley running approximately at right angles. Also, at right angles to this walkway was an area for parking automobiles which was immediately to the north of the curb of appellees' walkway. The walkway in front of these stores was not an extension of the public sidewalk along the south side of Tenth Avenue. It is conceded by the appellants that the walkway was well within appellees' property line.

On the night of August 12, 1952, the appellants had attended a carnival along the Ritchie Highway and had started home between ten and ten-fifteen. They decided to walk home along Tenth Avenue and "walk in front of these stores". They "had never been there before, never walked in front of them". At that time the stores were closed and the sidewalk was not illuminated in any way. During business hours the buildings and the pavement in front were illuminated by a "gooseneck" light shining down. The sidewalk stopped twenty inches from the end of appellees' property. The grade of the sidewalk was higher than that of the alley. Therefore,

at the end of the sidewalk a step six inches high had been built. The landing at the bottom of this step extended twenty inches and then there was another step about five inches high, beyond which there was a gutter nine inches wide in the fifteen foot alley. As the appellants walked by these unlighted shops, Mrs. Nocar was about three feet ahead of her husband, looking straight ahead and not downward. She did not see the step and lost her footing between the end of the sidewalk and the bottom of the first step. She fell forward into the gutter and into the alley, and claimed that as a result she was severely injured. There was no street light along Tenth Avenue at the place where the alley intersected Tenth Avenue. On March 3, 1955, Anne Arundel County installed a light on the southeast corner of Tenth Avenue and this alley.

The appellants claim that the trial judge erred in excluding from evidence a photograph of an unidentified man with one foot on the first step and the other foot in the gutter in the alley. The trial judge was correct in refusing to admit this photograph in evidence. According to Mrs. Nocar's testimony the gutter was not the cause of her fall. She missed her footing in stepping from the sidewalk to the first step. This photograph unduly emphasized the gutter in the alley as the cause of the fall and is a posed picture. *Kirsch v. Ford,* 170 Md. 90, 93, 94, 183 A. 240. Furthermore, it has been repeatedly stated by this Court that questions relating to the admissibility of photographs are left largely to the discretion of the trial court. *Kirsch v. Ford, supra,* 94, and cases there cited. Appellants further claim that because this photograph was offered in evidence during the taking of the pretrial deposition of Mr. Harry Goldberg, one of the appellees, without any objection, it should have been admitted in evidence at the trial. Deposition Rule 10 (c) (1), Rules of Practice and Procedure, Part Two, I, provides that such objections are not waived by failure to make them before or during the taking of the deposition "unless the ground of the objection is one which might have been obviated or removed if presented at that time." As the objection could not be removed we are of opinion that the trial court's ruling was correct.

The appellants further claim that the trial court erred in

refusing to allow them to read into evidence the entire pretrial deposition of Mr. Goldberg. They admitted that the sole purpose of offering this pretrial deposition was for the purpose of the admission of the aforesaid photograph. As this photograph was properly not admitted, the deposition was not admissible.

At the request of the appellees, Mrs. Nocar was examined by Dr. Ullrich, who made a report of his findings as to her condition and the treatment he believed she should receive. Shortly before the trial appellees' counsel received a "Request for Admission of Matters of Fact" from appellants' counsel. Among other things, it requested the appellees to admit "that the defendants engaged Dr. Henry F. Ullrich to make an examination of one of the plaintiffs, Mrs. Helen Nocar, and that in due course they received the following report: * * *." The appellants attempted to have this report admitted into evidence and on objection this was denied by the trial court. The appellants assign this as error under Rule 6 (a), Rules of Practice and Procedure, Part Two, II, "Admission of Facts and of Genuineness of Documents", which provides that any party to a proceeding may request in writing the other party to admit "(1) the genuineness of any relevant documents described in and exhibited with the request or (2) the truth of any relevant matters of fact set forth in the request." Such matter shall be deemed as admitted unless within a certain period the party to whom the request is directed serves upon the party requesting the admission "a sworn statement either denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully either admit or deny those matters." It is admitted that the appellees did not reply to this request. However, the request made by the appellants was for the appellees to admit that they engaged Dr. Ullrich to make the examination and that they received his report. There was no request for the appellees to admit that Dr. Ullrich would testify to the statements mentioned in the report, which might have been objected to by counsel. Nor was there any request to admit the truth of this doctor's report. The appellants did not indicate to the appellees prior to trial that they intended to offer that

report in evidence. We, therefore, see no objection to the court's ruling.

Mr. Roger T. Powers, a civil engineer, was called as a witness by the appellants and testified that he made an inspection of the premises at Tenth Avenue, where the alleged accident occurred, in May or June, 1955, almost three years after the alleged accident. He was asked what he found upon inspection as to the construction of the sidewalk and buildings. After objection by the appellees, counsel for the appellants stated that he proposed to show by the engineer that the buildings and sidewalk did not meet the minimum requirements for safety. When Mr. Powers was asked whether he followed certain minimum safety requirements in the construction of buildings and sidewalks from the viewpoint of public use, he replied: "We consider the safety of the public in all designs." He was then asked what he found in connection with the sidewalk as he observed it from an engineering standpoint and based upon his experience in erecting buildings and sidewalks. The court sustained an objection to that question partly on the theory that there was no evidence that the condition of the sidewalk was the same at the time of the alleged accident as it was when inspected by Mr. Powers. In the absence of such a showing and on account of the very general nature of the question we see no error in the ruling.

The appellants also contend that the trial court was in error in refusing to permit the jury to visit the scene of the alleged accident. The court took this motion under consideration and, after hearing all the testimony, found there was no need of such a view by the jury. The appellants rely on Code, 1951, Article 75, Section 105, which provides in part: "It shall be lawful for the court in any civil action at law, upon the application of any party to the cause, if in the opinion of the court it is proper and in the interest of justice so to do, to make such order as may be necessary in order to have the jury make an inspection of real property, which is the subject of litigation or of the place where any material fact in issue took place, * * *." This Code provision leaves the question to the discretion of the court. We are of opinion that the judge did not abuse his discretion in this refusal.

The appellants further contend that the trial court left to the jury to determine a question of law as to what constituted negligence and stressed the following part of the charge: "If you should find that the defendants constructed this building in an irregular manner, and that that physical condition of the building coupled with the fact that it was not lighted might not have been anticipated by the defendants as reasonably prudent persons should have anticipated in walking along that street at night, and not knowing that there was a step down, the premises not being lighted, if you should find that those circumstances constitute negligence, then, that would be within your prerogative." In a former part of the charge the trial judge carefully defined negligence. *Feinglos v. Weiner*, 181 Md. 38, 46, 28 A. 2d 577; *Richardson v. Fleetway Cabs, Inc.*, 198 Md. 512, 520, 84 A. 2d 910; *Victor Lynn Lines v. State*, 199 Md. 468, 478, 87 A. 2d 165. Furthermore, as no objection was taken by the appellants to that portion of the charge as required by Rules of Practice and Procedure, Part Three, III, Trials, Rule 6 (d), this question is not properly before this Court. *Wash. Sub. San. Comm. v. Musgrove*, 203 Md. 231, 237, 100 A. 2d 27.

The appellants also except to the statement by the trial judge in his charge that "generally, the duty to light this street was upon the County Commissioners." Of course, after the stores were closed there was no lighting on this private sidewalk constructed on appellees' own property. Mr. Harry Goldberg, one of the appellees, testified that he had nothing to do with the street lighting. There was no contradiction of this. Also, the appellants proved at the trial that the County Commissioners of Anne Arundel County later illuminated the alley and this street by a light. The court merely recited the statement of the undisputed evidence.

Dr. Philip Keister, a practicing physician in Brooklyn, Maryland, testified that Mrs. Nocar came to his office on the night of August 12, 1952, and stated that she had fallen on Tenth Avenue. He found multiple abrasions, scratches and bruises on her body, principally on the left side and involving the left knee. X-rays were taken which showed no fractures. He concluded that the patient was suffering from an injury

to the internal structure of the knee, to the ligaments or cartilages. The injury to the ligaments or cartilages would not show any positive findings from X-ray. Early in 1953 he advised her to see a surgeon. He tried to get the best results he could before doing so. When he last saw the patient, she complained of pain on kneeling or climbing steps and was unable to straighten her leg out completely. He thought this was caused by the injured cartilage. Nothing more could be done medically to improve the cartilage. This was why he sent her to the surgeon. He did not state that the accident caused this injury to the cartilage.

Dr. James R. Cianos, the surgeon to whom Dr. Keister referred Mrs. Nocar, testified that the reference was made to him for evaluation of the knee for surgical treatment. He examined the patient first on June 16, 1953. Dr. Keister had been treating her medically and she was sent to him to find out whether an operation on the knee was at that time necessary. His examination showed a mild degree of flexion deformity in the knee. He thought there was an injury to the outer cartilage. At that time he felt that Mrs. Nocar's condition was not serious enough to warrant an immediate operation. He re-examined her on February 8, 1955. At that time the knee could be straightened out completely but caused pain. He felt at that time that she should have an operation to remove the lateral meniscus. He recommended that she have such an operation. He further said: "For example, we might find that there is a mild degree of arthritis present, which cannot be seen on X-ray. You might find a tear of another type. You might find a tear of the outer ligaments. In other words, one cannot make a one hundred per cent diagnosis just from clinical findings alone, and X-rays in some instances give you no increased help. Sometimes by injecting air into the joints before taking an X-ray, that might help. But no one can sit here and say he can make a pre-operative diagnosis with a one hundred per cent certainty. All we can do is, based on our experience, based on the patients we have seen previously with this type of condition, and based on the operations we have performed, make a tentative diagnosis. All we can do is feel that the procedure, which we outline, is the

best recommendation for that particular patient, * * *." When asked by appellants' counsel if Mrs. Nocar went through the operation how much confinement would be required in the hospital, and what would be the cost of such an operation, an objection was made and sustained. An objection was also sustained to the question as to what his charges would be for such an operation. The court, in sustaining these objections, said: "It is difficult to state what the expense of something is that has not happened yet, and, especially, in view of what the Doctor has already said about the uncertainties of the condition."

As contended by the appellants, it has been held in a number of cases that damages may be recovered for expenses to be incurred as well as for expenditures already made. *F. W. Woolworth Co. v. Seckinger*, (5th Cir.), 125 F. 2d 97; *Stoebier v. St. Louis Transit Co.*, 203 Mo. 702, 102 S. W. 651; *Sang v. City of St. Louis*, 262 Mo. 454, 171 S. W. 347. Of course, as stated by Dr. Cianos, his diagnosis may be wrong. It might be found that Mrs. Nocar's disability, as suggested by him, was due to an arthritic condition. His diagnosis was tentative. The fall, as he stated, might have torn an outer ligament which would not require such an extensive operation as that recommended by him and might not require as long a stay in the hospital or as large a surgeon's fee as he might estimate at that time. Neither Dr. Keister nor Dr. Cianos testified that the alleged accident caused the injuries complained of, although Mrs. Nocar so advised them. We are of opinion that probably Dr. Cianos should have been allowed to answer the questions objected to, as he certainly made plain to the jury the tentative nature of his diagnosis. The weight of those answers was, of course, a question for the jury. However, for reasons hereinafter stated, a new trial will not be awarded because we are of opinion that the case should not have been submitted to the jury and, therefore, the ruling on these questions was not harmful to the appellants.

The appellants here admit that the sidewalk and steps were built on private property. The sidewalk was lighted by a gooseneck light when the stores were open. Appellants never

had walked on this street before. There was no evidence that other people used this sidewalk at night when the stores were not open and the sidewalk not lighted. Although the public was invited to use the sidewalk when the stores were open, no invitation was extended when they were closed. Therefore, at the time of this alleged injury, Mrs. Nocar was an intruder or volunteer, or at the most a bare licensee. There was nothing to indicate to the appellants that this pavement was intended for public use other than for entrance to the stores. Therefore, the appellees owed the appellants no duty of protection or to keep the premises safe for walking at night when the stores were closed and the pavement was not lighted. The mere fact that the sidewalk was there did not confer upon the appellants the right to have the sidewalk and steps made safe for them at night, nor was there any evidence that the construction of the sidewalk and steps created a dangerous condition. There was no evidence that anyone else ever fell there. There was no evidence of failure to repair or to warn sufficiently. The testimony showed that it was the duty of the County to light this area at night. We are, therefore, of opinion that the question of the primary negligence of the appellees should not have been submitted to the jury. *Maenner v. Carroll*, 46 Md. 193, 222; *Gordon Sleeprite Corp. v. Waters*, 165 Md. 354, 168 A. 846; *Myszkiewicz v. Lord Baltimore Filling Stations*, 168 Md. 642, 178 A. 856; *Pellicot v. Keene*, 181 Md. 135, 28 A. 2d 826; *Sherwood Bros., Inc. v. Eckard*, 204 Md. 485, 105 A. 2d 207.

Also, Mrs. Nocar had never been on this private pavement before. She admitted that it was pitch dark that night. She said she knew that they were approaching an alley. It was so dark she could not see it. She expected the sidewalk to end when she came to the end of the building but did not expect the sudden drop. When she came to the end of the building and expected the pavement to end and knew she was approaching the alley, she said she was looking straight ahead and admitted that she did not look down. She might well have been held guilty of contributory negligence as a matter of law. *Balto. Traction Co. v. Helms*, 84 Md. 515, 525, 36 A. 119; *Fulton Building Co. v. Stichel*, 135 Md. 542, 549, 550,

109 A. 434; *Balto. & Ohio R. R. Co. v. State,* 190 Md. 227, 234, 58 A. 2d 243.

The jury, before rendering their final verdict, told the court they were unable to find negligence and later retired. The appellants claim that the verdict was merely one of sympathy. Although the appellees did not file a cross appeal, we are of opinion, for the reasons herein given, that the error of the trial judge in refusing to allow Dr. Cianos to answer the two questions objected to was harmless error, due to the fact that the case should not have been submitted to the jury. The appellees filed a motion for a directed verdict. The error, therefore, was harmless. There must be both concurrence of error and injury to constitute a reversible error. *Meyer v. Frenkil,* 116 Md. 411, 82 A. 208; *Tittlebaum v. Pa. R. R. Co.,* 167 Md. 397, 404, 174 A. 89; *Larkin v. Smith,* 183 Md. 274, 284, 37 A. 2d 340. The judgments will therefore be affirmed.

*Judgments affirmed, with costs.*