RABINOVITZ *v.* KILNER
RABINOVITZ, TRADING AS AYRDALE FOOD
MARKET, TO OWN USE AND USE OF THE HOME
INSURANCE COMPANY *v.* KILNER

[No. 85, October Term, 1954.]
(Two Appeals in One Record)

*Decided March 18, 1955.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON AND HAMMOND, JJ.

*I. Duke Avnet,* with whom were *Avnet & Avnet* and *Richard H. James,* Attorney for The Home Insurance Company, on the brief, for appellant.

*J. Gilbert Prendergast,* with whom were *Phillips L. Goldsborough, III,* and *Clark & Smith,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The suit below was by the appellant, the favored driver under the right of way statute, to recover damages resulting from a collision between his truck and that of the appellee at an intersection where there was neither a traffic light nor traffic warning signs. The jury found for the defendant, the appellee here. The appellant claims that the trial court erred in its charge to the jury. The charge presented, in the generalities customary in these cases, the elements of proximate cause, burden of proof, negligence and contributory negligence, and damage. As the meat of the charge, there was quoted Code (1951), Art. 66½, Sec. 196, to the effect that vehicles approaching or entering an intersection shall have the right of way over vehicles approaching from the left, and shall give the right of way to those approaching from the right. The jury was next told that violation of the statute does not give rise to absolute liability unless the violation "not otherwise excused" is the proximate cause of, or contributed to, the happening of the accident, and that: "It is the obvious purpose of this rule to direct the order of precedence as between vehicles moving on intersecting roads or streets in such manner that their lines of progress will cross and that a collision may result if neither yields the right of way. The statute does not specify how near a vehicle approaching from the right must be to the point of intersection in order to be entitled to the right of way with respect to a vehicle approaching from the left, nor what must be the proximity of the latter to the point of possible collision in order that the approach of one coming at a greater distance from the right may be disregarded. It would be difficult to prescribe such limitations upon the rule in view of the diversity of the conditions to which it must be applied. Certainly, the Court would not be justified in regulating the enforcement of the rule according to specific measure of distance which the Legislature has not found it expedient to adopt. The question whether a vehicle approaching from the right is sufficiently near

the street or road intersection to have the right of way over a vehicle approaching from the left necessarily depends in each case upon its own facts. The width of the intersecting highways, the speed of the vehicles, and various other conditions might materially affect the issue as to whether an asserted right of why should be recognized or denied."

There was neither discussion nor recital of the facts. The appellant excepted to the charge because it failed to include the substance of three prayers offered by him. The first prayer was a restatement of the right of way statute. We think it was covered sufficiently by the charge. The second prayer was that if the jury found the appellant's vehicle to have been proceeding north and the appellee's east, and that both arrived at the same time at the intersection, then the appellant's vehicle had the right of way and the appellee's vehicle should have yielded; and if the jury should find that it did not and "that as a direct consequence thereof", the appellant's vehicle was struck by the other vehicle, then the verdict must be for the appellant. The third prayer was similar except that it was premised on a finding by the jury that the favored vehicle entered the intersection ahead of the unfavored vehicle.

The appellant's testimony was that he was driving his truck in Baltimore north on Ayrdale Ave. at from fifteen to twenty miles an hour and as he reached the intersection of Belle Ave., he slowed down and saw "a truck coming down, about a half a normal block on Belle Avenue, to my left"; and that he assumed the truck would slow down to stop since he had the right of way. When he was half way across the intersection, he saw the appellee's truck about twenty feet away, and when he was three-fourths of the way across, he was struck at the left rear fender and wheel. His vehicle travelled over one hundred feet after the collision (as a result, he says, of his being thrown to the floor) and came to rest after striking a garage on property at the northeast corner of the intersection. On cross-examination, he stated

that the appellee's truck was sixty or seventy feet away when he first saw it. He later said it was one-half block away, as he had on direct examination.

The appellee testified that he did not see the other truck until his brother, who was riding with him, yelled out and "I hit the brake hard and spied Mr. Rabinovitz coming through, cut sharp into the lefthand lane of Arydale facing the same direction as Mr. Rabinovitz; we were both still moving when we met, my right front with his left side." The appellee testified further that as he was going east on Belle Ave., he was looking for the sign post at Ayrdale Ave., his purpose being to find a street into which he could turn left to get to Cold Spring Lane. When the appellee's brother was asked which truck entered the intersection first, he said: "It was about what we call a dead heat * * * I couldn't give you an honest answer * * *". When asked if he had not previously testified that appellant's truck was the first to enter the intersection, he answered that he did not remember doing so but would not either admit nor deny that he had. He said he first saw the other truck when both vehicles had reached the intersection.

There is no claim or any testimony that either vehicle was proceeding at an unlawful speed. The appellee's claim of negligence on the part of the appellant is that he drove with dogged determination straight through the intersection without looking right or left. It is apparent that the evidence would permit a finding that the appellant had entered the intersection ahead of the appellee—from the testimony on both sides and as an inference from the point of contact at the northeast corner of the intersection, three-quarters of the way across. There is no dispute that the two vehicles arrived at the intersection simultaneously. The instructions of the court, which were quoted above, were taken verbatim from the opinion in *Taxicab Co. v. Ottenritter,* 151 Md. 525, 531, 532. That case was a suit by the unfavored driver and the Court refused to hold, as a matter of law, that the statute created an absolute right in the favored

driver, fatal to a claim of the unfavored one. The *Ottenritter* case has served as the rock upon which unfavored plaintiffs have since attempted to build their cases. It was a logical extension of the rule early laid down in *Chiswell v. Nichols,* 137 Md. 291, and *Hooper McGaw v. Kelly,* 145 Md. 161, namely: "* * * that while the right of way statute does offer an area of protection to the one on the right when both reach the intersection more or less simultaneously, it does not operate *via* extension to give such priority where the one on the right is a considerable distance away when the unfavored driver reaches the intersection * * *". *Automobile Right of Way,* 11 Md. L. R. 159, 166. The *Ottenritter* rule has been followed in other cases where elements of speed or recklessness made it inequitable for the court to apply the statutory right of way rule in its strict form. *Askin v. Long,* 176 Md. 545, would appear, on first consideration, to be but another of the *Ottenritter* type. Yet there, the Court found that the unfavored driver's evidence was so "inconclusive, contradictory and uncertain as not to be accepted as the basis of a legal conclusion". The plaintiff had testified that the favored car was one hundred twenty feet away when he was going over the intersection. The Court found both to be negligent. The *Askin* case seemingly should be considered to have been decided solely on the facts because, in subsequent cases, the Court has followed the Ottenritter rule and permitted the unfavored driver to go to the jury. See *Legum v. Hough,* 192 Md. 1; *Wlodkowski v. Yerkaitis,* 190 Md. 128; *Richardson v. Fleetway Cabs, Inc.,* 198 Md. 512; *Valcourt v. Ross,* 201 Md. 17.

The appellee says that the right of way staute has been held to be a "cautionary guide, rather than a peremptory command" and that in every case it is a question of fact, whether a vehicle approaching from the right is near enough to be entitled to the right of way, so that whether or not there has been a violation of statute, which is the proximate cause of the accident, depends upon the facts in the environment involved. There is

no doubt that the cases hold this, as well as that the favored driver is not relieved from the duty of using reasonable care to avoid a collision. He must proceed at a lawful rate of speed, keep his car under control, and be careful to avoid injury to others.

These rules have all been applied in cases in which the unfavored driver was permitted to go to the jury on the question of negligence of the favored driver, or where the court refused to instruct as a matter of law as to negilgence or contributory negligence. Nevertheless, neither the statute nor the cases which have construed it have done away with the common law rule that the driver, free of.negligence in the operation of his vehicle, who reaches the intersection first, is entitled to the right of way and may assume that one approaching from the left, giving no evidence of excessive speed or other lack of control of the vehicle, will yield the right of way. If the vehicles arrive at the intersection simultaneously under lawful and careful operation, the cases recognize also that the driver on the right has precedence. *Wlodkowski v. Yerkaitis, supra,* states the general rule thus: "* * * in the absence of a statute or ordinance making some regulation to the contrary, the first driver to enter an intersection has the right of way. Where a driver, having the right of way, has entered an intersection, he may assume that a later arrival approaching at right angles will not drive negligently, but will reduce his speed and give him the precedence to which he is entitled; and he may safely act upon this assumption until a situation is presented which, to the mind of a reasonable person, places the privileged vehicle in a position of peril. It then becomes his duty to exercise every reasonable precaution to avoid injury, even though the later arrival is negligent." The Court goes on to say, after discussion of the right of way statute: "The statutory rule qualifies the common-law rule giving the right of way to the first arrival at an intersection, but does not abrogate it." Then, the Court quotes *Ward v. Clark,* 232 N. Y. 195, 133 N. E. 443, which is also quoted in *Valcourt v. Ross, supra,*

201 Md. 17, 22. Judge Cardozo said for the Court, in referring to the New York right of way statute, which is similar to that of Maryland: "A right of way, like a burden of proof, will establish precedence when rights might otherwise be balanced. * * * A right of way might turn the scales if, when the plaintiff started to cross, the cars had been equi-distant, or nearly so, from the point of collision, due regard being had also for the speed of their approach." See also *Bode v. Coal Co.*, 172 Md. 406, 413; 11 Md. L. R., *supra*, at p. 163; *Warner v. Markoe*, 171 Md. 351, 357; *Jones v. Dickerson*, 184 Md. 492. In *Bush v. Mohrlein*, 191 Md. 418, the Court, while recognizing that the right of way statute gives only a relative right to the favored vehicle, dependent upon the particular circumstances, such as speed or the distance of the vehicles from the intersection, turned the unfavored driver down as a matter of law in a case where, without excess speed or lack of control, both vehicles reached the intersection at the same time, saying: "While we have consistently held that the Maryland right of way statute gives only a relative right dependent upon the circumstances of each particular case, we also hold that where the evidence unquestionably shows that the unfavored driver violated the statutory rule, and the violation was a contributing cause of the accident, the court should withdraw his case from the jury on the ground of his contributory negligence." The testimony of the defendant in that case was that when he reached the curb line, he saw the unfavored driver entering the intersection but that "since he had the right of way, he continued north but ran into the right side of plaintiff's car."

It is our view that the appellant was entitled under the testimony in this case to the substance of the instructions requested in prayers two and three. The language from the *Ottenritter* case, which the trial court read to the jury, is unassailable as an abstract statement of the law but it was small nourishment to a jury attempting to apply that general law to the facts of the case before

it. The quotation was taken from a case which dealt with the rights of the unfavored driver, where the Court said, immediately after the quoted language, that the evidence would permit a finding by the jury that the unfavored vehicle was in the intersection when the favored one was so far away that there could be no reasonable expectation of collision, and that it would be proper to instruct the jury if it did so find, that the unfavored vehicle was entitled to recover. It would not, in our opinion, appropriately and accurately state the law applicable to evidence which permitted a finding that the favored driver had reached the intersection at the same time as, or before the unfavored driver, with no reason to believe that the right of way would not be respected. All questions of fact, such as speed, diligence of observation and the relative position of the cars at various times are, of course, for the jury. The favored driver must satisfy the jury that he was free from negligence under the tests of the cases. He was entitled, however, to have the jury consider the facts under proper instructions for which timely and specific request was made. We recognize the very salutary principles established by the cases that the charge of the trial court must be considered as a whole and that the judge is not to be put in a strait jacket, but must be given latitude in instructing the jury. Giving full recognition to these sound guides to appellate review, we think that here the charge was prejudicial to the appellant because under the facts here the qualifications set out in the extract from the *Ottenritter* case have little if any application or relevance.

The appellee contends that the instructions requested by the appellant should not have been granted in any event because they did not refer at all to contributory negligence on the part of the appellant. He says that the prayers were not only bad in substance but bad in form because of this omission. We think that under the practice of instructing the jury orally, the technical requirements which were formerly essential to the val-

idity of prayers, no longer have the same significance. The court had already instructed on the tests and significance of negligence and contributory negligence when the exception was made to the charge, and the substance of the law stated in the prayers could have been fitted into the charge as a whole in proper relation to the factor of contributory negligence, by supplemental instructions. *State, use of Creasey v. Penna. R.R. Co.*, 190 Md. 586, is relied on by the appellee in this connection. In that case, there was no oral charge to the jury. Even under those circumstances, the Court observed that the failure of a prayer to require a finding of no contributory negligence was not error because the matter was made sufficiently clear by another prayer. Further, in that case, the Court said, after commenting on the weakness inherent in the system of written prayers: "A simple oral charge, stating the applicable legal principles and issues, with or without a summary of the evidence, would undoubtedly have been of assistance to the jury, and would have obviated many of the technical points as to form urged by both sides in this appeal."

Judgment must be reversed and case remanded for a new trial.

*Judgment reversed, with costs, and case
remanded for a new trial.*